## CLOSSON *v.* MORRISON.

If an officer unlawfully obtains possession of a debtor's property, as by breaking into his dwelling house, or arresting his person, without proper authority to do so, for the purpose of attaching such property on mesne process, or levying upon it on execution, such attachment or levy will be void.

An officer who has arrested a prisoner on a warrant charging him with the commission of a crime, may ordinarily search him so far as to ascertain if he have deadly or dangerous weapons on his person, or in his possession, and if such are found, he may seize them and hold them, until they can be safely returned or otherwise properly disposed of, if in good faith he believes such course necessary for his own or the public safety, or for the safe keeping of the prisoner.

If a prisoner has about his person money, or other articles of value, by means of which, if left in his possession, he might obtain tools, or implements, or assistance, or weapons, with which to effect his escape, the officer arresting him may seize and hold such property for a time, without being liable for a conversion of the property, if he acts in good faith and for the purposes aforesaid.

It is a question of fact in such cases for the jury, whether the officer taking such property from his prisoner, acted in good faith and for a proper purpose, or in bad faith, with an improper and unlawful purpose.

If an officer having arrested a prisoner upon a warrant, should take money from his person, simply for the purpose of getting possession of it, so that he might attach it on writs which he then held, or was expecting to receive, against the prisoner, then his possession of the property being obtained fraudulently and unlawfully, the attachment which he might thus make would be void.

But if the officer took the money from his prisoner in good faith, and solely to secure his safe keeping, and while he was thus properly and lawfully holding the money, a writ be put into his hands against the prisoner, he may lawfully attach the money, and such attachment will be valid.

In such case, if there were no evidence upon the question of good faith, or if upon all the evidence the jury should be unable to find a preponderance either way upon that question, the presumption should be in favor of the officer.

THIS is an action of trover for legal tender notes of the value of $350, for gold and silver coins of the value of $16.50, for one silver watch of the value of $30, one watch chain of the value of $5, and one calf skin wallet of the value of $1.

The writ is dated Nov. 20, 1865, and was entered at the November Term, 1865.

It appears that the defendant, on the evening of the 3d day of November, 1865, at Bath, in said county, acting as a deputy sheriff, having arrested the plaintiff on a complaint for larceny, made by one Seth Ford, and having had the plaintiff arraigned before a justice of the peace, on said complaint, and the hearing thereon having been adjourned, thereupon proceeded upon his own motion, and without any order from such magistrate, to search the person of the plaintiff against his will, and found thereon and took from him the aforesaid legal tender notes, bank bills, gold and silver coin, watch, watch chain and wallet. On the morning of the next day, it being Nov. 4, 1865, two writs of attachment against the plaintiff, one in favor of said Ford, and one in favor of Edward K. Cox, made by said Ford's direction, were put into the defendant's hands, and he thereupon attached said property and made return thereof. Subsequently to this, and within a few days, the defendant received other writs against the plaintiff, and made additional attachments thereon of the same property.

The defendant claims that it was necessary for him to search and take from the plaintiff the property aforesaid, in order to insure his safe keeping; that he did so in good faith for that reason only, and that he was authorized by law so to do, and that the necessity for such seizure, and his good faith in making it, are to be presumed without any affirmative showing on his part; and further, the defendant claims that he, by virtue of said necessity, having searched the plaintiff and taken from his person the property aforesaid, and for these reasons having the same necessarily in his keeping, could properly attach the same on the writs aforesaid, in manner aforesaid, and that he now properly holds the same on said attachments.

The plaintiff claims:

1.   That the burden of proof in regard to the existence of the necessity for the search and seizure, and in regard to its being done with a proper intention, rests upon the defendant.

2.   The plaintiff claims, that, if it be conceded that the search and seizure for the objects named, and under the circumstances named, were lawful, still, any abuse by the defendant of his authority, (it being an authority conferred by law,) would make him a trespasser *ab initio;* that an attachment of this property which he had in his hands, simply

to insure the safe keeping of the plaintiff, and which for all other purposes, was still on the person of the plaintiff, was an abuse of the authority under which he took and held the property; that the attachment of the property was "a positive act incompatible with the exercise of the legal right under which he made the search and seizure, and that therefore the defendant is a trespasser *ab initio.*

It was agreed that the questions above raised be submitted to the court, and that such judgment be rendered in said case as said court may order. Or, if either party so elects, after such opinion is given, said cause may have a jury trial.

The questions of law thus raised were reserved.

*Westgate & Morse,* and *H. & G. A. Bingham,* for plaintiff.

*Carpenter* and *Hibbard,* for defendant.

SARGENT, J. The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, and against being deprived of life, liberty or property, without due process of law, is secured by the 4th and 5th amendments to the constitution of the United States, and by articles 15 and 19, Bill of Rights, N. H. Constitution.

But in the administration of criminal law, searches and seizures often become, not only reasonable, but highly proper and necessary. The duty of officers under search warrants for specific property in specified places, is well settled. 1 Ch. Cr. Law 57, 58; *Com.* v. *Erwin,* 1 Allen 587; *Halley* v. *Mix,* 3 Wend. 351. Our statute provides that "any officer who shall find any implement, article or thing, kept, used or designed to be used in violation of law, or in the commission of any offence, in the possession of or belonging to any person arrested, or liable to be arrested for such offence, or violation of law, shall bring such implement, article or thing, before the justice or court, having jurisdiction of the offence, who shall make such order respecting their custody or destruction as justice may require."

And we think that an officer would also be justified in taking from a person whom he had arrested for crime, any deadly weapon he might find upon him, such as a revolver, a dirk, a knife, a sword cane, a slung shot, or a club, though it had not been used or intended to be used in the commission of the offence for which the prisoner had been arrested, and even though no threats of violence towards the officer had been made. A due regard for his own safety on the part of the officer, and also for the public safety, would justify a sufficient search to ascertain if such weapons were carried about the person of the prisoner, or were in his possession, and if found, to seize and hold them until the prisoner should be discharged, or until they could be otherwise properly disposed of. *Spalding* v. *Preston,* 21 Vt. 9, 16.

So we think it might be with money or other articles of value, found upon the prisoner, by means of which, if left in his possession, he might procure his escape, or obtain ,tools, or implements, or weapons with

which to effect his escape.   We think the officer arresting a man for crime, not only may, but frequently should, make such searches and seizures ; that in many cases they might be reasonable and proper, and courts would hold him harmless for so doing, when he acts in good faith, and from a regard to his own or the public safety, or the security of his prisoner.

It must, we think, in a case like this, be a question of fact for the jury, whether the taking of the property from the prisoner were *bona fide*, for any purpose indicated above as reasonable and proper, and, of course, justifiable, or whether it were *mala fide*, unreasonable, and for an improper and unjustifiable purpose.

It seems to be now well settled, though it was long held the other way, that where an officer unlawfully gets possession of a debtor's property, as by breaking into his dwelling house without proper authority, and then attaches it on mesne process, or levies upon it on execution, the attachment or levy will be void.   *Ilsley* v. *Nichols*, 12 Pick. 270 ; *People* v. *Hubbard*, 24 Wend. 369 ; *Curtis* v. *Hubbard*, 4 Hill 437.

In the cases above cited, the officer broke into a dwelling house to attach personal property on a writ in a civil cause.   The breaking in that case was unlawful, and the possession of the property being thus unlawfully obtained, it was held that the attachment of the property was void, not that the property might not have been legally and properly attached on these writs, if the officer could have properly obtained possession of it, without breaking the house.   So in this case, the money and other articles were proper articles to attach, if the officer could rightfully obtain possession of them, without arresting the debtor, which his writ did not warrant him in doing.   Now if the officer took advantage of his warrant, and the arrest under it, to take from his prisoner this property, not for any legitimate purpose, but simply for the purpose of attaching it on these writs, that would be obtaining possession of the property under false pretenses, and fraudulently, which would make the possession to stand like the unlawful possession in case of breaking into the house in the other case, and would not justify the attachment. *Woodworth* v. *Kissam*, 15 Johns. 186 ; *Murray* v. *Burling*, 10 Johns. 172 ; *Allen* v. *Crofoot*, 5 Wend. 507 ; *Chapman* v. *Lathrop*, 6 Cow. 110 ; *Jones* v. *Root*, 6 Gray 437.

If the jury shall find, or if it be conceded that the defendant was justified in the first instance in taking this property from the prisoner under his warrant to arrest, then the subsequent attachment of the goods on the writs was well enough, and will be valid.   But if it be found or conceded that the officer took this property from the prisoner, for the purpose of converting it to his own use, or merely for the purpose of getting it into his possession so that he might be able to attach it on writs of other parties, which he then held, or was expecting to receive afterwards, then his possession would be fraudulent and unlawful, and the attachment he might subsequently make in pursuance of such purpose, would, we think, be void.

Plaintiff's counsel in argument take the position "that defendant could not lawfully do any act in reference to said property not required to se-

cure the safe keeping of the prisoner, except such acts as he would have been authorized to do, if the property had actually remained upon the person of the prisoner." But this is plainly erroneous. There is nothing in the nature or character of the property in this case that is so peculiar that it enjoys any exemption from attachment. It is only because the property is upon the person of the debtor, that prevents it being attached on any writ. It is a right or privilege that attaches to the person of the debtor, and not to the property, and as soon as the property is separated from the person of the debtor, in any legal way, either by his own act or the act of another, this special exemption ceases, and the property may be attached like any other property.

That the defendant could not have appropriated this property to any use, under the original warrant, or any authority conferred by it, is clear. He would then have been a trespasser *ab initio*, no doubt. The authorities on this point are numerous and unquestioned, but they have no application to this case, because here a new authority is conferred by law to do something, which the original warrant did not authorize. If, by virtue of one process, he could seize the property and take it from the person of the prisoner, and hold it to secure his safe keeping, that would be the extent of that authority. But while thus holding it under that authority, a new process comes into his hands, by which he is invested with a new authority, and is commanded to attach this property and hold it on this new process to satisfy the judgments that may be recovered in these suits. The property, if rightly taken from the person of the debtor, is now where it can be attached without interfering with the person of the debtor, or breaking into his house to obtain possession of it.

If this property had been separated from the person of the prisoner, or taken from his dwelling house, under authority of law, it is separated from his person and out of his house for all purposes. If this defendant rightfully and lawfully holds possession of the property in question, without having used force or fraud to obtain it, then when a writ is put into his hands, he may properly and lawfully attach it. But if the possession of the property was obtained by force or fraud, and hence was illegal, then his subsequent attachment will be illegal and void.

Again, suppose that this defendant had legally and properly taken this property from the person of the prisoner, and was simply holding it to prevent his escape, and while thus holding it in his possession, another officer, who knew nothing of what had happened, should come with some writs against the prisoner, and finding this property in the defendant's hands, and learning that it belonged to the prisoner, he might attach it on his writs and hold it, the same as he might a yoke of oxen that belonged to the prisoner, which he might find in the hands of some third person. And why might not the defendant attach the property as well as another, if his possession was lawfully obtained?

If the defendant did nothing under his warrant except what his warrant justified him in doing, up to the time the writs came into his hands, and since then has done nothing except what his writs authorized him to do, he stands well enough; for in that case he has a sufficient justifica-

tion for all his acts.  He is not a trespasser *ab initio*, because he is not a trespasser at all.

What are the presumptions in the case as to whether the officer acted in good faith or in bad faith, and on whom is the burden of proof? There can, of course, be no presumption either way in such a case, that shall be conclusive in law, not a *"presumptio juris et de jure,"* that cannot be contradicted by any evidence.  Nor would it, perhaps, be a presumption of law at all, not a *"presumptio juris,"* even, which should hold the conduct of the officer to be right under all circumstances, till the contrary is affirmatively proved.  But the acts of the officer in taking the property, with the kind of property taken, and all the attendant and subsequent circumstances of the seizure and of the attachment, are to be considered and weighed, and the question of good faith on the part of the officer is to be settled and decided upon the preponderance of the evidence, when there is any such preponderance.  But in case of the equal balancing of the testimony, where there was no preponderance either way, or, in the absence of all evidence upon the question, there can, we think, be no hardship in holding that the presumption is in favor of the officer.  This would be what is sometimes termed a presumption of fact, a *"presumptio hominis,"* or *"presumptio judicis,"* in contradistinction to a presumption of law.  Jacobs' Law Dic. Title *presumptio;* 3 Bouv. Just. secs. 3064–3068 ; 1 Greenl. Ev. secs. 14, 44, and *seq.;* 1 Philips Ev. 155, and *seq.*, and notes.  But the distinction between this last and the *"presumptio juris,"* before spoken of, is not very clearly marked or well defined by the authorities.

As in case of an instrument in writing, in which there has been some material alteration, it is held in this State, that there is no presumption of law, either conclusive or not conclusive, that the alteration was made after the execution of the instrument, so as to exclude the instrument as evidence, either conclusively or until some explanation is given of the alteration, *aliunde.*  But the instrument is allowed to be given in evidence in the first instance, notwithstanding the alteration is apparent, and the jury are instructed that they are to consider the instrument itself, in connection with all the other evidence in the case, and decide, upon the preponderance of evidence, when the alteration was made. But if there is an entire absence of evidence and of circumstances, either in the instrument itself or *aliunde*, from which the jury could find the time of the alteration, or if upon all the evidence there was no preponderance either way, then the presumption of fact arises that the alteration was made after the execution.  *Cole* v. *Hills*, 44 N. H. 227, 235, and cases cited.

So in this case, we think the facts should all be submitted to the jury, and they should find, upon a preponderance of all the testimony, whether the seizure in this or any other case was made *bona fide* or *mala fide*. But if there was no evidence in the case from which that question can be settled, or, if after hearing all the evidence that may be introduced, the jury should find the scales to hang in even balance, the presumption should be held to be, and the jury should be instructed, that they are to presume that the seizure was made *bona fide*.  We think this due to

the cause of justice, and to the protection of the officers of justice, who may be often called on to act promptly and without legal advice, in cases of doubt and uncertainty, and where the interests and safety of the public are most deeply involved.

The circumstances in nearly every case would be the most material evidence, and should all be submitted to the jury in the first instance, without any legal presumptions being made either way ; but if the jury, upon the evidence, are unable to decide the case, they should assume as a presumption of fact, that the acts of the officer were right, upon the same principle that officers acting under oath, are presumed to have done their duty till the contrary is proved. *Hills* v. *Colvin*, 14 Johns. 132, and cases cited ; *Gilman* v. *Holt*, 4 Pick. 258 ; *Cross* v. *Brown*, 41 N. H. 283, 288 ; *Shackford* v. *Newington*, 45 N. H. 415, 420 ; Coke Litt. 232, b.