Leroy **STEPHENS**, Appellant

v.

**UNITED STATES** of America, Appellee.

No. 15221.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 14, 1959.

Decided Oct. 22, 1959.

---

Messrs. William J. Garber and Curtis P. Mitchell, Washington, D. C., for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., was on the brief, for appellee. Mr. Thomas O'Malley, Asst. U. S. Atty., also entered an appearance for appellee.

Before WILBUR K. MILLER, BAZELON and BASTIAN, Circuit Judges.

BAZELON, Circuit Judge.

This is an appeal from a conviction for possession of lottery tickets (D.C. Code, § 22–1502 (Supp. IV, 1958)). Appellant did not testify at the trial.

His sole contention on this appeal is that the trial court erred in refusing to suppress certain highly incriminating evidence seized under the following circumstances: On the morning of July 9, 1958, officers of the Metropolitan Police Department obtained search warrants for two separate premises, 1547 Third Street, N.W., and 1235 E Street, N.W., based upon information that they were being used in the operation of a numbers lottery. That afternoon four officers executed the search warrant at the Third Street address. One stationed himself at the rear, the other three proceeded to the front door, knocked, announced their identity and mission, and were admitted by a 13-year-old girl. Immediately upon entering they saw appellant and a woman in the dining room, which was located straight ahead at the end of a short hallway. The couple had their backs to the officers and were observed going through a doorway at the rear of the dining room into the kitchen in what the officers described as "hastily" and in a "hurried manner." A door led from the kitchen to the back yard where the fourth officer was stationed. Appellant, but not the woman or child, was immediately arrested and searched. Numbers code slips and keys to the premises were found on his person.

The officers had no warrant for Stephens' arrest, and had never seen him previously. They did not observe appellant in the commission of any illegal act nor was any lottery paraphernalia immediately visible. It was not until fifteen minutes after appellant's arrest that the officers found numbers paraphernalia, records and books concealed in a closet and a kitchen cabinet. From all outward appearances, these premises were a private dwelling, typically appointed with dining room, living room and kitchen furniture.

If appellant is correct in his contention that his arrest was unlawful, it follows that the evidence seized was wrongfully admitted at his trial. In this jurisdiction, as in most others, an arrest without a warrant can be sustained if the arresting officer had probable cause to believe that an offense has been committed and that the person apprehended has committed it.[1] Proba-

---

[1] The District of Columbia follows the common law rule that a law officer may arrest without a warrant if (1) there is probable cause to believe that a felony has been committed and that the arrested person committed it, Smith v. United States, 1958, 103 U.S.App.D.C. 48, 50, 254 F.2d 751, 753, or (2) if a misdemeanor has been committed in the presence of an arresting officer. Maghan v. Jerome, 1937, 67 App.D.C. 9, 88 F.2d 1001. Any offense punishable by death or imprisonment for a term exceeding one year is a felony. All others are misdemeanors. Maghan v. Jerome, supra; see United States v. Davis, 1948, 83 U.S. App.D.C. 99, 100, 167 F.2d 228, 229.

Appellant was indicted on four counts: two felonies and two misdemeanors, but was convicted only for a misdemeanor; D.C.Code, § 22–1502 (Supp. IV, 1958) (possession of lottery tickets). One of the felonies of which he was acquitted makes it illegal for any person to "keep, set up, or promote, or be concerned * * in any * * * manner, in managing, carrying on [or] promoting * * * any lottery * * * or [to] sell or transfer any ticket * * * in any lottery * * * or have in his possession for

ble cause means more than a "bare suspicion" but does not require sufficient evidence to sustain a conviction. Rather, "probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 1949, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879. And see Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. We think that in the circumstances disclosed by this record, the arresting officers had such probable cause.

At the time of Stephens' arrest the officers had the following information: During a period of two and one-half months a police officer assigned to the gambling and liquor squad had placed numbers bets on fifteen separate occasions with a co-defendant, Moses Taylor, at the E Street address. Simultaneously, two other officers began observing these premises. On ten separate occasions during the month preceding appellant's arrest these officers observed Taylor depart from the E Street premises at approximately 12:45 p. m., "with bulging pockets," board a street car, stop at two other addresses, finally enter the Third Street premises here in question around 2:15 p. m., and leave shortly thereafter "minus the bulge." Numerous other unidentified males and one "known numbers operator" were also seen to enter the Third Street premises with bulging pockets and depart shortly without the bulge. On seven of these occasions the officers observed another co-defendant, one Venson, enter the Third Street premises at about 2:30 p. m., and leave shortly thereafter carrying a large brown bag.

At the same time that the police secured search warrants for the two suspected premises, they also obtained arrest warrants for Taylor and Venson.[2] Before executing the Third Street warrant, the officers took up observation of the premises. Within ten minutes after their arrival at 2:15 p. m., they saw Venson enter the premises and leave a few minutes later by the rear door carrying his usual brown bag. Immediately after Venson had left, the officers proceeded to execute the warrant in the manner described earlier. The officers also knew from their experience in investigating gambling that numbers slips are written daily throughout the city, collected at various sub-stations, and ultimately assembled at a central office in time to be tabulated and winners chosen, according to pari-mutuel totals at various race tracks.[3]

In these circumstances, we think the officers had reasonable grounds to believe that the premises were being used as an assembly point in the lottery operations, and that Stephens, who was the only male on the premises and was leaving "hastily," was participating in that operation with Venson who had just departed. Thus this case is distinguishable from United States v. Di Re, 1947, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210, upon which appellant relies so heavily. There the crime, possession of counterfeit gas ration coupons, did not neces-

the purpose of sale or transfer, any [such] ticket." D.C.Code, § 22–1501. For the purpose of establishing probable cause, we think this section and the misdemeanor for which appellant was convicted are the relevant provisions. Although the police could not normally arrest for the misdemeanor unless it was committed in their presence, the D.C. Code provides that an officer can arrest without a warrant "as in the case of a felony, upon probable cause that the person arrested is violating * * * section 22–1502 (possession of lottery tickets)." D.C.Code, § 23–306 (Supp. IV, 1958).

2. The latter warrant was made out for John Doe, but described Venson.

3. Since the Government's expert witness concerning the operation of a lottery was one of the officers who arrested appellant, this information can be properly considered as an element in establishing whether the officers at the scene had probable cause to arrest appellant.

sarily require the participation of a large number of persons. More important, the only information the arresting officers had was supplied by an informer who was present at the scene of the crime and arrest. Since the informer did not in any way implicate Di Re, who was sitting next to the other defendant on the front seat of a parked car, the only circumstance upon which the police could have based the arrest was his mere presence at the scene of an illegal transaction. This the Supreme Court held was insufficient to constitute probable cause.[4]

Affirmed.

---

**4.** See also Hicks v. United States, 1893, 150 U.S. 442, 14 S.Ct. 144, 37 L.Ed. 1137.