James E. FORD, Appellant,

v.

UNITED STATES of America,
Appellee.

George KIMBLE, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 17835, 17836.

United States Court of Appeals
District of Columbia Circuit.

Argued June 15, 1965.

Decided Aug. 24, 1965.

Messrs. Addison Bowman, Washington, D. C., and Eugene Siler, Williamsburg, Ky. (both appointed by this court) for appellants.

Mr. Allan M. Palmer, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and FAHY, WASHINGTON, DANAHER, BURGER, WRIGHT, McGOWAN, TAMM and LEVENTHAL, Circuit Judges, sitting *en banc*.

FAHY, Circuit Judge, *with whom* Chief Judge BAZELON and Circuit Judges WASHINGTON, DANAHER, BURGER, WRIGHT, McGOWAN, TAMM, and LEVENTHAL *join:* Appellants were convicted of robbery in violation of 22 D.C.Code § 2901. The trial court granted leave to appeal *in forma pauperis* and the appeals have been consolidated in this court. Several appointed counsel were at different times per-

mitted to withdraw. However, when the appeals were heard by a division of this court oral arguments were presented on appellants' behalf and their *pro se* briefs were available. The court entered an order reciting that the record appeared inadequate to permit proper review of the legality of appellants' arrests without warrants. The record was accordingly remanded to the District Court with directions to hold a hearing and make factual findings on this issue.[1] Such a hearing was held and its transcript is now before us, with a memorandum of the trial judge 240 F.Supp. 648 containing his findings and conclusion. We have reheard the cases *en banc,* with appellants represented by counsel we appointed. They and the United States Attorney at the request of the court have addressed themselves particularly to the questions whether under the Fourth Amendment to the Constitution or under our supervisory jurisdiction an arrest warrant is or can be required where it is practicable to obtain one, and whether it was practicable in this case to obtain a warrant before making the arrests. The need for an answer to these questions was thought to grow out of the admission in evidence of a pistol seized by the arresting officers, who had no warrant, as incidental to the arrest of Kimble, and the denial of a motion to suppress this evidence on the ground that the warrantless arrest was illegal.[2]

The facts as developed on the motion to suppress and at the hearing on the remand are that the robbery occurred at about 4:30 a. m. August 10, 1962, at a tourist home located in this city. Two men participated, one of whom used a pistol in aid of the robbery. A Miss Williams was required to open the money locker, from which one of the men took about $85. About ten minutes after it

occurred Detective Harris and Officer Caldwell, of the Robbery Squad, responded to a report of the robbery. They were advised by one Winston, "a good informant of the police department," and by a person named Dodson, that appellants had been in Winston's "place" shortly before the robbery and had asked Winston to accompany them on a "hustle." Winston and Dodson also told the police that they saw both appellants running past Winston's place and through an alleyway at about the time of the robbery. The officers brought Miss Williams to Police Headquarters where she identified Kimble's picture from among a number of others shown to her. His photograph was also identified by Winston and Dodson. Early the next morning, August 11, the officers received a telephone call from Winston to the effect that appellants were then sitting in a Buick parked in front of Winston's house. The officers immediately went to the scene. When they arrived the Buick, with four occupants, was nearby but had been moved a block before arrival of the officers. They then arrested its occupants. Ford was in the driver's seat with Kimble sitting next to him. One of the officers removed a pistol, the questioned evidence, from the floorboard of the automobile where it rested on a white towel at Kimble's feet. The arrests occurred at about 7:55 a. m. At a lineup at about 9 a. m. Miss Williams identified both appellants as the robbers.

There is no doubt, and it is not seriously disputed, that there was probable cause for the arrests. If they were lawful the seizure of the pistol was also lawful, and the motion to suppress it as evidence was properly denied.

At the hearing on the remand the United States Attorney introduced no evidence and the defense called two witness-

---

1. Circuit Judge Washington declined to participate in the order believing that the record was adequate to enable the court to decide the case.

2. Appellant Kimble specifically moved to suppress admission of the pistol. Ap-

pellant Ford's motion was originally made to suppress a statement made by him shortly after he was identified at a lineup on August 11. One of the grounds for Ford's motion was that there was no probable cause for his arrest and that a warrant was not obtained.

es who had testified at the trial. The statement of the trial judge on the remand is set forth in part in the margin.[3]

We find no case holding that a warrantless arrest in a public place for a felony, supported by probable cause, offends the standard of validity prescribed by the Fourth Amendment.[4] The standard is reasonableness. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. In Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 a warrantless arrest on probable cause was sustained notwithstanding it appears there was time to obtain a warrant. The Court relied upon the statutory authority of the arresting officer[5] to make "arrests without warrant * * where [he] has reasonable grounds to believe that the person to be arrested has committed or is committing" a violation of the Narcotic Laws. The Court said the question was whether the officer had "probable cause" within the meaning of the Fourth Amendment and "reasonable grounds" within the meaning of the statute. Finding he had such cause and grounds the arrest was upheld as lawful and the search of Draper's person valid as incidental to the arrest.[6] And see Kurtz v. Moffitt, 115 U.S. 487,

504, 6 S.Ct. 148, 29 L.Ed. 458; United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; and the statement of the Court in Carroll v. United States, 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543:

> The usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony * * *.

This statement, however, is followed in Carroll by the Court's explanation that the public safety and the due apprehension of criminals charged with heinous offenses required that such arrests be made "at once" without warrant. Such an "at once" reason for the rule would not preclude a requirement that a warrant be obtained when it is practicable to do so. But the Court has not established such a requirement as to arrests. It is true that the practicability test was applied to a warrantless search and seizure in Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, over the dissent of Chief Justice Vinson, for himself and Justices Black, Reed and Burton, finding the search lawful as incidental to a lawful arrest. And in United States v. Rabinowitz, 339 U.S.

3. I find very little in their [the two witnesses'] present testimony which adds to that previously given except that it points up the reliability of the informer, the fact that defendants had no fixed place of abode, and the fact that there was time to apply for a warrant for the arrest of defendants before the actual arrest was made on the day succeeding the day of the commission of the offense, after a "tip off" as to their whereabouts by the informer. While it was practicable to seek an arrest warrant before the arrest, I adhere to my former conclusion herein, to the effect that an arrest warrant is not a *sine qua non* to a valid arrest, even where it is practicable to seek one, in a case where the officers had, as here, probable cause to believe that a felony had been committed and that the defendants had committed it, and did not act unreasonably or oppressively. I do not believe the law requires police officers to leave their police duties, where they are urgently needed, for the purpose of obtaining an arrest warrant under the circumstances of this case as set forth in the testimony and the findings already made herein.

4. Amendment IV—Searches and Seizures
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

5. 26 U.S.C. § 7607, added by § 104(a) of the Narcotic Control Act of 1956, 70 Stat. 570.

6. The Court cited Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652; Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280; Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145; Giordenello v. United States, 357 U.S. 480, 483, 78 S.Ct. 1245, 2 L.Ed. 2d 1503.

56, 70 S.Ct. 430, 94 L.Ed. 653, Trupiano was overruled to the extent that it "requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest." 339 U.S. at 66, 70 S.Ct. at 435.

In Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, Toy's arrest was held invalid only because not supported by probable cause or "reasonable grounds," not because a warrant had not been obtained. As in *Draper* the provisions of 26 U.S.C. § 7607, as well as probable cause, were advanced as the bases for the arrest. The Court cited *Draper* to the effect that the statutory "reasonable grounds" and the constitutional "probable cause" were substantially the same. There was no intimation that the invalidity of the arrest of Toy was due also to the absence of a warrant which could have been obtained. Mr. Justice Douglas' concurring opinion is significant in this regard:

> While I join the Court's opinion I do so because nothing the Court holds is inconsistent with my belief that there having been time to get a warrant, probable cause alone could not have justified the arrest of petitioner Toy without a warrant.

371 U.S. at 497, 83 S.Ct. at 422. This view was not expressed by the Court.

The practicability test is also absent from our own decisions. Mills v. United States, 90 U.S.App.D.C. 365, 196 F.2d 600, cert. denied, 344 U.S. 826, 73 S.Ct. 27, 97 L.Ed. 643; Willis v. United States, 106 U.S.App.D.C. 211, 271 F.2d 477, cert. denied, 362 U.S. 964, 80 S.Ct. 881, 4 L.Ed.2d 879; Stephens v. United States, 106 U.S.App.D.C. 249, 250, 271 F.2d 832, 833, where Judge Bazelon said:

> The District of Columbia follows the common law rule that a law officer may arrest without a warrant if * * * there is probable cause to believe that a felony has been committed and that the arrested person committed it * * *.

And see Smith v. United States, 103 U.S.App.D.C. 48, 254 F.2d 751, cert. denied, 357 U.S. 937, 78 S.Ct. 1388, 2 L.Ed.2d 1552. Similar cases in other courts, federal and State, are legion.

In Gatlin v. United States, 117 U.S.App.D.C. 123, 326 F.2d 666, the invalidity of Gatlin's arrest was lack of probable cause; and the arrest of Miller, a co-defendant, was also held to be unsupported by probable cause. There is, however, a discussion in footnote 10 in *Gatlin* of the failure of the officers in arresting Miller to obtain an arrest warrant. We commented that the officers,

> failed to place their information before a "neutral and detached magistrate" who obviously is in a better position to determine probable cause than an "officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 * * * This failure alone, absent exceptional circumstances, may be sufficient to invalidate this arrest.

The arrest thus referred to was in the attic of a home which had been entered and was being searched by officers without either an arrest or search warrant. And each case we cited involved either search of a home or of occupied premises apart from an arrest or, as in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, search of a home intermingled with an arrest. These situations raise different questions from those involved in an arrest alone. Probable cause is not ordinarily sufficient under the reasonableness test of the Fourth Amendment to support search of a home without a search warrant. Agnello v. United States, 269 U.S. 20, 33, 46 S.Ct. 4; Jones v. United States, 357 U.S. 493, 497–498, 78 S.Ct. 1253, 2 L.Ed.2d 1514, citing as closely relevant, Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951, and Johnson v. United States, supra. It was such a search, to be distinguished from an arrest in a public place for felony, that evoked the often-quoted language

of Mr. Justice Jackson for the Court in *Johnson:*

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.[3]

3. In United States v. Lefkowitz, 285 U.S. 452, 464, 52 S.Ct. 420, 76 L.Ed. 877, this court said: " * * * the informed and deliberate determinations of magistrates empowered to issue warrants as to what searches and seizures are permissible under the Constitution are to be preferred over the hurried action of officers and others who may happen *to make arrests.* Security against unlawful searches is more likely to be attained by resort to search warrants than by reliance upon the caution and sagacity of petty officers while acting under the excitement that attends the capture of persons accused of crime. * * * "

> Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.

333 U.S. at 13–14, 68 S.Ct. at 369.[7]

█ The Fourth Amendment test of reasonableness of course applies to arrests as well as to searches and seizures. See Giordenello v. United States, 357 U.S. 480, 485–486, 78 S.Ct. 1245. Reasonableness, however, varies with the subject matter and the circumstances. This is the lesson of the cases. Warrant-

7. In his concurring opinion in *Wong Sun* Mr. Justice Douglas maintains that *Johnson* is the law and supports his position that Toy's arrest was invalid because

less searches and seizures inside homes or occupied premises often have been held unreasonable, as in Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253; McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; and Johnson v. United States, supra; and when held lawful, as in *Rabinowitz, supra,* and Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, have evoked strong disagreement. But the cloud over *Rabinowitz* and *Harris* concerning the need for a search warrant when it is practicable to obtain one has not reached the same intensity in arrest cases unaccompanied by the searching of premises. The disagreement has been over the use of a valid arrest on warrant to authorize as incidental thereto a search of the whole premises where the arrest is made. The dissent in *Rabinowitz,* 339 U.S. *supra* at 72, 70 S.Ct. at 437 points out that search of an arrested person is

> to protect the arresting officer and to deprive the prisoner of potential means of escape, Closson v. Morrison, 47 N.H. 482, and, secondly, to avoid destruction of evidence by the arrested person. * * * From this it follows that officers may search and seize not only the things physically on the person arrested, but those within his immediate physical control,

but not, it was protested, the whole premises where the arrest occurs.[8] The dissenting Justices, however, recognized the well settled exception rooted in necessity, illustrated by Carroll v. United States, *supra,* 267 U.S. at 153, 45 S.Ct. 28, which sanctioned a warrantless search and seizure of a vehicle

> on the ground that "it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

warrantless. 371 U.S. at 498, 83 S.Ct. 407.

8. And see Preston v. United States, supra, at 367, 84 S.Ct. 881.

339 U.S. at 73, 70 S.Ct. at 438. The further statement in *Carroll, supra,* 267 U.S. at 156, 45 S.Ct. at 286, that,

> In cases where the securing of a warrant is reasonably practicable, it must be used,

was in the context of a search and seizure of a vehicle.[9] And in McDonald v. United States, *supra,* the arrest upon which the search hinged was held unlawful and not to justify search and seizures in the home, not because the arrest was warrantless but because it grew out of an unlawful breaking into the home. Mr. Justice Jackson stated:

> Having forced an entry without either a search warrant or an arrest warrant to justify it, the felonious character of their entry, it seems to me, followed every step of their journey inside the house and tainted its fruits with illegality. *Cf.* Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341; Taylor v. United States, 286 U. S. 1, 52 S.Ct. 466; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367.

335 U.S. at 459, 69 S.Ct. at 195.

There thus appears in the law a difference, on the one hand, in what is considered reasonable and therefore necessary to justify a search and seizure in a home or occupied premises, from what, on the other hand, is reasonable and sufficient to justify a felony arrest in a public place. A warrant has not been required for the latter if there is probable cause, though it may have been practicable to obtain a warrant. This difference is not only reflected in decisional law. It gains support from statutes explicitly authorizing warrantless arrests on probable cause, statutes which have been relied upon by the Supreme Court, thus implicitly recognizing their constitutionality. We have already referred to 26 U.S.C. § 7607. We now refer also to our own Code:

> The members of the Board of Commissioners, and of the police force, shall possess in every part of the District all of the common-law powers of constables * * *.

4 D.C.Code § 136, to be read with Carroll v. Parry, 48 App.D.C. 453, 459, where it is said:

> At common law a constable could arrest without warrant one whom he had reason to suspect had committed a felony, and we are aware of no statute in modification of that rule in this jurisdiction.

And see 18 U.S.C. § 3052 which authorizes F.B.I. agents to arrest for felonies without a warrant where they have "reasonable grounds to believe that the person to be arrested has committed or is committing" a felony.

It is interesting to note in passing that the Fourth Amendment does not use the word "arrest." The Framers were primarily concerned with the security of persons, houses, papers and effects from searches, and seizures resulting from searches. This appears from the language of the Amendment. The main thrust was directed at the invasion of privacy through general warrants of assistance and *lettres de cachet.* See dissenting opinion of Mr. Justice Frankfurter in Harris v. United States, 331 U.S. 145, 155, 67 S.Ct. 1098, and of Mr. Justice Douglas in Draper v. United States, 358 U.S. 307, 314, 79 S.Ct. 329. It is not surprising, therefore, that historical support is advanced by the United States for the proposition that the common law, which, prior to the Bill of Rights, recognized the validity of a warrantless arrest for felony, even though not committed in the presence of the arresting official, was not intended by the Framers to be disturbed. And see Trupiano v. United States, 334 U.S. at 713, 68 S.Ct. 1229 (dissenting opinion of Chief Justice Vinson); United States v. Hall, 348 F.2d 837 (2d Cir.).

■ The protection of the Amendment, however, whatever may be thought

---

9. Consideration of the legality of the arrest without warrant in *Carroll* was completely independent of consideration by the Court of the warrantless search and seizure. 267 U.S. at 158–159, 45 S.Ct. 280.

to have been its primary thrust, is to be broadly applied. It embraces arrests, and the test it prescribes is reasonableness. We think this test, considered in light of history, decisional law and statutes, may not appropriately be held by us to depend upon a further test turning upon a decision as to the practicability of obtaining a warrant in case of an arrest in a public place for a felony on probable cause. Such an ingredient of reasonableness has never been adopted by the Supreme Court, and has been implicitly if not explicitly rejected there, by the courts in general throughout our history, and by Congress through enactment of statutes which, as we have seen, have been relied upon by the Supreme Court as though constitutional.

■■ However, the practice of arresting without a warrant when it is practicable to obtain one is not to be encouraged. On the contrary. In a doubtful or marginal case of probable cause an arrest may be sustainable on a warrant where without one it would fall.[10] And in any event the intervention whenever practicable of the independent judgment of a magistrate should be sought. We hold, however, that the Constitution did not require the securing of warrants for the arrests of appellants.

■ We come now to consider whether in the exercise of our supervisory jurisdiction we should adopt a rule, not required by the Fourth Amendment, that a felony arrest on probable cause, without a warrant, will not be deemed valid if it were practicable to obtain a warrant. We think the existing situation does not call for the adoption of such a rule. In so deciding we consider several factors. The conduct of the officers here, as Judge

Pine stated on the remand, see note 3, *supra*, was not unreasonable or oppressive.[11] *Cf.* Lopez v. United States, 373 U.S. 427, 440, 83 S.Ct. 1381, 10 L.Ed.2d 462. Probable cause for the arrests was strong, and when appellants' whereabouts was learned it was sensible for the officers to proceed immediately with the arrests. Moreover, Congressional enactments to which we have referred authorize warrantless arrests on probable cause. These are at least some deterrence to the adoption by us of an inconsistent rule. Additionally, we have Rule 5, Fed.R.Crim.P. It requires a person arrested to be taken before a magistrate without unnecessary delay for determination of the issue of probable cause.[12] The Supreme Court has given life to this Rule by excluding at the trial evidence obtained by its violation. Compliance with Rule 5(a), with the accompanying exclusionary rule, tends to lessen any untoward consequences in this jurisdiction of warrantless arrests. This argues against the exercise now of our supervisory authority to invalidate the arrests in this case. That authority, of course, continues to remain available if we ever become persuaded that a practice of not getting warrants, even though practicable to do so, was resulting in a significant number of unreasonable arrests, inflicting an injustice upon the immediate victims as well as a strain upon the judicial machinery.

We have considered other contentions advanced and find no reversible error.

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (concurring):

The Fourth Amendment, of course, protects the person against illegal arrest as

---

10. For the application of this position to a search see United States v. Ventresca, 380 U.S. 102, 106, 85 S.Ct. 741, 13 L.Ed.2d 684, and its reference to Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.

11. In pointing to this, however, we intend no encouragement of arrests without an arrest warrant even when the officer considers he has probable cause for the judgment of the magistrate should be

sought as a rule. See text, *supra*, p. 933. Of course our supervisory authority is not limited by a constitutional standard.

12. "Similar legislation, requiring that arrested persons be promptly taken before a committing authority, appears on the statute books of nearly all the states." McNabb v. United States, 318 U.S. 332, 342, 63 S.Ct. 608, 87 L.Ed. 819.

well as property against unlawful search. Unfortunately, however, a different set of principles has evolved with respect to the protection of each. As to the search of property, with certain well defined exceptions, it is clearly the law that a search warrant must be obtained.[1] When a police officer has evidence which he deems to be probable cause for the search, he must place that evidence before a judicial officer who will make that judgment. The security of property is not left to the judgment of a police officer "engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, *supra* Note 1, 333 U.S. at 14, 68 S.Ct. at 369.

With reference to the protection of persons from illegal arrest and subsequent search pursuant thereto, not only of their persons but of their immediate surroundings, it has been held that state law determines the validity of arrests without warrant. Johnson v. United States, *supra* Note 1, 333 U.S. at 15 n. 5, 68 S.Ct. 367; United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Most states follow the old common law principle that a police officer may make a valid arrest without a warrant for a misdemeanor or a felony committed in his presence and for a felony not committed in his presence where he has probable cause to believe that a felony has been committed and that the person arrested committed it.[2]

Currently there appears to be a certain amount of uneasiness with this dichotomy between search and arrest. The Supreme Court, in Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed. 2d 1503 (1958), held that the issuance of an arrest warrant under Rules 3 and 4, FED.R.CRIM.P., must be based on the judgment of "a neutral and detached magistrate" who, in determining probable cause, "should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime." In Jones v. United States, *supra* Note 1, 357 U.S. at 499–500, 78 S.Ct. at 1257, where the Government sought to justify the entry of a home to arrest without an arrest warrant, the Supreme Court stated:

"These contentions, if open to the Government here, would confront us with a grave constitutional question, namely, whether the forceful nighttime entry into a dwelling to arrest a person reasonably believed within, upon probable cause that he had committed a felony, under circumstances where no reason appears why an arrest warrant could not have been

---

1. "Were federal officers free to search without a warrant merely upon probable cause to believe that certain articles were within a home, the provisions of the Fourth Amendment would become empty phrases, and the protection it affords largely nullified." Jones v. United States, 357 U.S. 493, 498, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958). See also Johnson v. United States, 333 U.S. 10, 13–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Chapman v. United States, 365 U.S. 610, 614–615, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). "[S]uch searches are * * * unlawful notwithstanding facts unquestionably showing probable cause." Agnello v. United States, 269 U.S. 20, 33, 46 S.Ct. 4, 6, 70 L.Ed. 145 (1925); Chapman v. United States, *supra*, 365 U.S. at 613, 81 S.Ct. 776. See also, e. g., Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932); McDonald v. United States,

335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). "In cases where the securing of a warrant is reasonably practicable, it must be used * * *." Carroll v. United States, 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925). "Over and again this Court has emphasized that the mandate of the Amendment requires adherence to judicial processes. See Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4 (1925)." United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951).

2. But it has been said that "[t]he rule is that an officer should obtain a warrant wherever possible * * *." 1 ALEXANDER, THE LAW OF ARREST § 74, p. 428 (1949).

sought, is consistent with the Fourth Amendment. * * * " 3

This court has several times ruled on the *Jones* situation and has held that such arrests are illegal in the District of Columbia. Morrison v. United States, 104 U.S.App.D.C. 352, 357, 262 F.2d 449, 454 (1958); Accarino v. United States, 85 U.S.App.D.C. 394, 402, 179 F.2d 456, 464 (1949); *cf.* District of Columbia v. Little, 85 U.S.App.D.C. 242, 246, 178 F.2d 13, 17, 13 A.L.R.2d 954 (1949), affirmed on other grounds, 339 U.S. 1, 70 S.Ct. 468, 94 L.Ed. 599 (1950). And in Gatlin v. United States, 117 U.S.App.D.C. 123, 128 n. 10, 326 F.2d 666, 671 n. 10 (1963), we said: "The police here, as in Wong Sun [v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)], acted without an arrest warrant. Thus they failed to place their information before a 'neutral and detached magistrate' who obviously is in a better position to determine probable cause than an 'officer engaged in the often competitive enterprise of ferreting out crime.' Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). This failure alone, absent exceptional circumstances,

may be sufficient to invalidate this arrest. [Citing cases.]"

Thus we see, as the dissents in *Giordenello,* 357 U.S. at 489–492, 78 S.Ct. 1245, and *Jones,* 357 U.S. at 500–503, 78 S.Ct. 1253, clearly indicate,[4] the law with reference to the necessity of arrest warrants is in a state of flux with change possibly impending. This change would, of course, eliminate some of the problems which now arise from warrantless arrests followed by interrogation of the accused. For example, if probable cause for arrest were just established before a judicial officer, there would be no occasion for attempting to have the arrestee provide additional evidence of probable cause prior to being brought before the Commissioner. See Rule 5(c), FED.R.CRIM.P. Thus the disreputable and unconstitutional practice of arresting for investigation and interrogation would be discouraged.

The trial court here held that, after obtaining information amounting to what they considered probable cause for the arrest of appellants, it would have been practicable for the police to obtain arrest

---

3. The Supreme Court's holding in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), that evidence obtained by state officers as well as federal officers in violation of the Fourth Amendment is inadmissible in state court proceedings is a further indication that prior rulings in Fourth Amendment cases do not necessarily represent the Supreme Court's present position in this area.

4. See also Mr. Justice Douglas, concurring, in Wong Sun v. United States, 371 U.S. 471, 497–498, 83 S.Ct. 407, 422 (1963):
   "While I join the Court's opinion I do so because nothing the Court holds is inconsistent with my belief that there having been time *to get a warrant,* probable cause alone could not have justified the arrest of petitioner Toy without a warrant.

   "I adhere to the views I expressed in Jones v. United States, 362 U.S. 257, 273, 80 S.Ct. 725, 4 L.Ed.2d 697. What I said in the *Jones* case had been earlier stated by Mr. Justice Jackson, writing for the Court in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367 (another narcotics case):

   'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.' Pp. 13–14, 68 S.Ct. p. 369. And see Chapman v. United States, 365 U.S. 610, 615–616, 81 S.Ct. 776.

   "The Court finds it unnecessary to reach that constitutional question. I mention it only to reiterate that the *Johnson* case represents the law and is in no way eroded by what we fail to decide today."

warrants. The trial court held further, however, that the arrests were legal without them.

In the present state of the law this ruling was undoubtedly correct. Nevertheless, I have no doubt that before too long personal liberty will be accorded the same protection under the Fourth Amendment as the ownership and possession of property now enjoy. See Barrett, Personal Rights, Property Rights, and the Fourth Amendment, in 1960 SUPREME COURT REVIEW 46.