**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 10, 2009

Charles R. Fulbruge III
Clerk

No. 08-30983

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

DONALD BATTISTE

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-CR-416-1

Before WIENER, GARZA, and ELROD, Circuit Judges.

PER CURIAM:[*]

The original opinion in this matter was issued by the panel on August 13, 2009. A petition for rehearing is currently pending before this panel. The petition for panel rehearing is granted in part. Accordingly, we WITHDRAW our previous opinion and replace it with the following opinion.

Donald Battiste ("Battiste"), a former police officer of the New Orleans Police Department, challenges his conviction under 18 U.S.C. § 242. Battiste pled guilty to two counts: (1) unreasonable seizure of property resulting in bodily

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

injury; and (2) use of excessive force during arrest, resulting in bodily injury. For the following reasons, we affirm the conviction and sentence.

I

The convictions at issue arose from an investigation of Battiste conducted by the Public Integrity Bureau ("PIB") of the New Orleans Police Department ("NOPD"). The NOPD was contacted by a source who informed them that Battiste was stealing money from arrestees. Investigators from PIB conducted an "integrity check" of Battiste, employing a decoy and a covert vehicle. The decoy sat in the front passenger seat of the vehicle in an open-air public parking lot in Battiste's assigned district, with a surveillance van parked inside the lot approximately 50 feet away from the decoy.

The decoy was given $510 in cash by the NOPD. The money was divided into three packets: one was placed in the decoy's left front shirt pocket, one in the right front pants pocket, and the other in the left rear pants pocket. The decoy was told to act drunk. He was also instructed to, when confronted by the police, put his hands in the air, not make any sudden moves, not to argue, and not to do anything combative or aggressive. The investigators set up a surveillance camera to capture the encounter. Battiste and his partner were dispatched to the surveilled location in order to respond to a drunk male harassing women in the area.

The facts of the interaction between Battiste and the decoy appear in the videotape and were sworn to by Battiste in his guilty plea. Battiste and his partner arrived at the scene. Battiste exited his vehicle and walked to the driver's side of the covert vehicle, which was empty, while his partner walked to the passenger side where the decoy was seated. Battiste then walked around to the passenger side and interposed himself in front of his partner. After the decoy was ordered out of the vehicle, Battiste turned him around (so that his back was to Battiste), and struck the decoy in the back with his elbow. The

decoy cried out and dropped to his knees. Battiste then handcuffed him and walked him to the police vehicle, telling his partner to search the covert vehicle. Before placing the decoy in the police car, Battiste searched him and extracted the money that was in the decoy's pants pockets, placing all of it in his own pocket. He then put the decoy in the back seat of the police car. After a short conversation with a supervisor who appeared on the scene and then departed, Battiste walked out of view of the surveillance camera. A PIB investigator on the scene, who was able to observe Battiste's actions, saw Battiste take the money from his pocket and divide it into two packets, placing one in his front pants pocket and the other in his rear pants pocket. He then returned to the police vehicle, and he and his partner drove the decoy to the police station. At the station, Battiste's partner took the decoy inside for booking while Battiste remained in the police car.

PIB investigators later discovered the decoy to be missing 251 dollars of the 510 dollars that had been planted. The decoy also reported that he had hurt his knee when he was knocked to the ground by Battiste and that it was painful for him to walk.

Battiste was arrested after completing his shift. He waived his *Miranda* rights and confessed to taking the money. After he pled guilty to both counts of the indictment, the district judge sentenced him to 57 months in prison. This appeal followed.

## II

Battiste argues that there is not a sufficient factual basis to support his guilty plea. Because this argument is raised for the first time on appeal, both parties agree that this court reviews for plain error. *See United States v. London*, 568 F.3d 553, 558 (5th Cir. 2009). Under plain error review, Battiste must show error that is clear or obvious and that affects his substantial rights. *United States v. Baker*, 538 F.3d 324, 332 (5th Cir. 2008). To show that the error

affected London's substantial rights, he "must show a reasonable probability that, but for the error, he would not have entered the plea." *London*, 568 F.3d at 558. If such an error is shown, this court has discretion to correct it, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 559.

Count 1 of Battiste's indictment alleges that Battiste:

> while acting under color of law as a commissioned officer of the New Orleans Police Department during an investigative stop, stole United States currency from a person known to the Grand Jury, thereby willfully depriving that person of the right. . . not to be subjected to unreasonable seizure of property, with the offense resulting in bodily injury; all in violation of Title 18, United States Code, Section 242.

Under 18 U.S.C. § 242, the government must prove that the defendant acted willfully and under color of law to deprive a person of a federally protected right.[1] *United States v. Lanier*, 520 U.S. 259, 264 (1997). Thus, Battiste was convicted under § 242 of an unlawful seizure under the Fourth Amendment, committed under color of law. Battiste argues that the seizure of the decoy's money did not violate the Fourth Amendment for two reasons: the seizure of the decoy's money was reasonable as part of the lawful arrest; and the decoy did not

---

[1] The statute states:

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.
18 U.S.C. §242.

have a cognizable possessory interest in the money that was seized.

The touchstone of the Fourth Amendment is, as always, reasonableness. Reasonableness is an objective standard, and must be assessed from the perspective of a reasonable officer on the scene. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989). To determine the reasonableness of a seizure under the Fourth Amendment, we examine the "totality of the circumstances," *Ohio v. Robinette*, 519 U.S. 33, 39 (1996), and balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Gates v. Texas Dep't of Protective and Regulatory Servs.,* 537 F.3d 404, 427 (5th Cir. 2008) (internal quotations omitted).

Battiste first argues that his seizure of the money from the decoy at the time of the arrest was reasonable under Fourth Amendment law that permits the arresting officer to take possession of "articles of value, found upon the prisoner, by means of which, if left in his possession, he might procure his escape, or obtain tools, or implements, or weapons with which to effect his escape." *United States v. Robinson*, 414 U.S. 218, 231-32 (1973)(quoting *Closson v. Morrison*, 47 N.H. 482, 484-85 (1867)), Battiste contends that because money may assist escape, a person has no right to maintain possession of money when he is arrested, and thus seizure of the money in this case was lawful as incident to the arrest.

Undoubtedly, there is a strong governmental interest in preventing the potential escape of an arrestee. However, under these facts, it is unclear how Battiste's seizure and subsequent appropriation of the money aided that goal. Even a seizure that is "lawful at its inception" may ripen into a Fourth Amendment violation where the "manner of execution unreasonably infringes possessory interests by, for example, converting a temporary deprivation of possessory interests into a permanent one." *Freeman v. City of Dallas,* 186 F.3d

601, 605 (5th Cir. 1999) (interpreting *United States v. Jacobsen*, 466 U.S. 109 (1984) and *United States v. Place*, 462 U.S. 696 (1983)). Battiste effected a permanent and illegal deprivation of the money by taking the money from the decoy at the scene, putting it into his own pockets, and subsequently failing to turn it over at the police station. These actions were objectively unreasonable.

Battiste's argument that the decoy did not have a possessory interest in the money because it belonged to the NOPD is unavailing. A Fourth Amendment possessory interest is not limited to formal legal title; "a property interest in the item searched is only one factor in the analysis, and lack thereof is not dispositive." *U.S. v. Finley*, 477 F.3d 250, 259 (5th Cir. 2007)(finding that defendant had a possessory interest in a seized cell phone owned by his employer). In this case, the decoy had clear possession of, and thus a possessory interest in, the money in his pockets, notwithstanding the fact that it formally belonged to the NOPD. We agree with the Government that the decoy's possessory interest in the money in connection with the seizure is sufficient to give rise to a Fourth Amendment violation.[2]

We thus find that Battiste's seizure was unreasonable under the Fourth Amendment and sufficient for the purposes of his conviction under 18 U.S.C. § 242.

### III

As to sentencing, Battiste contends that the district court erred in sentencing him pursuant to the Guideline applicable to robbery, USSG § 2B3.1. The district judge's application of the Guidelines is reviewed *de novo*; because Battiste objected below, factual findings are reviewed for clear error, rather than under the more stringent plain error standard. *See United States v. Garcia*, 567

---

[2] The Government argues that the seizure was *per se* unreasonable due to Battiste's use of force. We need not address this argument because we find that the seizure alone, isolated from the use of force, contravenes the Fourth Amendment.

F.3d 721, 735 (5th Cir. 2009).

The record demonstrates that Battiste struck the decoy violently and without provocation; slightly more than a minute later after the decoy was secured in the police car, Battiste went through the decoy's pockets and removed the money. In sentencing Battiste pursuant to the Sentencing Guideline for robbery, the district judge stated that in his view, the interaction between Battiste and the decoy constituted robbery, which occurs when a person "by force and violence, or by intimidation, takes or attempts to take from the person or presence of another anything of value." 18 U.S.C. § 2111. The district court distinguished Battiste's actions from theft, which does not involve any degree of force, violence, or intimidation. The facts are undisputed, and thus the district court did not clearly err.[3]

For the foregoing reasons, we AFFIRM the conviction and sentence.

---

[3] Battiste also contends that calculating his sentence under the base offense level for robbery raises a problem under double jeopardy. However, because he raises this argument for the first time in his reply brief, we decline to address it. *See United States v. Jackson*, 426 F.3d 301, 304 n. 2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief. . . are waived.").