**ROSE CHALET FUNCTIONS CORPORATION**

v.

**Vernon W. EVANS, Arthur E. Gustafson, Norman B. Hansen, Richard L. Reynolds and Frederick J. Wagner.**

Civ. A. No. 66–573.

United States District Court
D. Massachusetts.

Feb. 17, 1967.

Robert F. Muse, Brookline, Mass., Edgar L. Kelley, Boston, Mass., for plaintiffs.

George O. Gregson, Lynn, Mass., for defendants Gustafson, Trudeau Enterprises, Quigley.

Augustine S. Gannon, Jr., East Boston, for defendants Saugus Board, and Evans, Reynolds, Wagner, and Hansen.

Phil David Fine, Robert F. Sylvia, Boston, Mass., for defendants Saugus Board, and Evans, Gustafson, Hansen, Reynolds and Wagner.

## OPINION

WYZANSKI, Chief Judge.

*Findings of Fact*

1. Rose Chalet Functions Corporation is a Massachusetts corporation. Roy S. Bacon is its president and treasurer, George S. Rose its manager and clerk, and Robert F. Muse its principal stockholder and counsel. It operates on Route 1, in Precinct 9 of the Town of Saugus, a place where wedding parties, organization meetings, and like private functions may be held. It arranges to have food catered for such functions. It does not sell or arrange for the sale of alcoholic beverages, but if the host or guests of a private party bring alcoholic beverages to Rose Chalet, Rose Chalet, if so requested, will arrange itself or through a caterer to supply glasses, set-ups, waiters, and even bartenders.

2. Defendants Evans, Gustafson, Hansen, Reynolds, and Wagner at all material times have been the selectmen of the Town of Saugus. They are the authority for the issuance of all licenses by the Town of Saugus.

3. November 27, 1965 Rose Chalet in accordance with Mass.G.L. c. 138 made application to defendants for an all alcoholic common victualler beverage license for the year 1966.

4. Pursuant to notice, the selectmen held on December 6, 1965 a public hearing on that application.

5. The selectmen heard all the evidence and arguments offered in support of, and in opposition to the application. However, they did not cause an examination to be made of the premises of Rose Chalet, nor is it shown that there is any statutory or other duty imposed on them so to do, except "before issuing a license." Mass.G.L. c. 138 § 12, par. 5.

6. At the time Rose Chalet made its application, the selectmen of the Town of Saugus had power to issue 3 additional all alcoholic beverage licenses.

7. December 13, 1965 the selectmen "dismissed" the application "on the ground that the petitioner has shown no public need for the license and because of the fact that one half of the licenses issued are in the precinct involved."

8. In taking this action, the selectmen were in good faith. They believed that the recitals were true. They had no malice toward the applicant. They intended to act uprightly and according to law.

9. The action of the selectmen in granting on December 20, 1965 a common victualler all alcoholic beverage license in Precinct 9 to Pierro's Restaurant which previously had a "Club" category license, was regarded by the selectmen, in good faith, as being different from the granting of an all alcoholic beverage license to an enterprise which previously had no alcoholic beverage license.

10. At no time did defendant Gustafson or any other selectman indicate that he would treat Rose Chalet differently if it had a different lawyer, or that he would invidiously discriminate against Rose Chalet or favor another applicant of qualifications roughly equal to those of Rose Chalet. Insofar as Rose or Serino testified to the contrary their testimony is not believed by the Court.

11. December 20, 1965 Rose Chalet appealed from defendants' dismissal of its application to the Massachusetts Alcoholic Beverage Control Commission. March 8, 1966 the Commission held a hearing. At that hearing, Mr. Muse, as counsel for Rose Chalet, stated that there was no animus of any kind between Rose Chalet and the selectmen, and that there was merely a difference as to statutory interpretation and as to what was in the public interest. The selectmen repeated their view that the Town of Saugus had enough all alcoholic beverage licenses, particularly in Precinct 9. March 10, 1966 the Commission, being of opinion that there was no reason why Rose Chalet should not be licensed, remanded the case to defendants. But under Massachusetts law this remand is merely advisory and does not require the selectmen to accept the Commission's views. Mass.G.L. c. 138 §§ 12, 67, par. 3. Ferris v. Board of Selectmen of Norwell, 344 Mass. 757, 183 N.E.2d 301. Compare Largess v. Nore's, Inc., 341 Mass. 438, 170 N.E.2d 361.

12. Being of the same view as they were in December 1965, and still being in good faith, the selectmen took no further action upon Rose Chalet's application, except that on March 15, 1966 they voted to file the Commission's letter of remand.

13. Rose Chalet, having received notice of the remand, never asked the selectmen to proceed further with respect to the application for 1966. Nor has it made application for an all alcoholic beverage license for the year 1967.

14. At no time and in no way did defendants or any of them have the intent to deny Rose Chalet in connection with its application for an all alcoholic common victualler beverage license due process of law, equal protection, or any right, privilege, or immunity under the United States Constitution or any law.

15. December 21, 1965 the selectmen issued to Rose Chalet a common victualler's license under Mass.G.L. c. 140.

16. From at least as early as December 1965 the selectmen in good faith, even if erroneously, believed that a common victualler which did not have an all alcoholic beverage license was not conducting its business properly if it served set-ups for alcohol brought on its premises by patrons or their guests or supplied, directly or through a caterer, waiters and bartenders to dispense alcohol brought on its premises by patrons or their guests.

17. December 27, 1965 the selectmen voted to warn Rose Chalet to cease and desist from "the allowance and/or serving of alcoholic beverages on its premises." December 28, the clerk of the selectmen wrote Rose Chalet to this effect and added that "The Board is of the opinion that such allowance, serving or consumption of alcoholic beverages on the premises licensed only as a common victualler, constitutes an 'improper manner' mentioned in Chapter 140, Section 9 of the General Laws of the Commonwealth." In holding this opinion the selectmen relied in good faith in part upon an opinion rendered by Attorney General Dever April 24, 1935 which ruled that it is a question of fact whether the holder of a common victualler's license is conducting his business "in an improper manner", and that the licensing authorities are free to determine after hearing that there are circumstances making it improper or against the public good for a common victualler to invite or permit the public to bring alcoholic beverages upon the premises covered by the license.

18. January 18, 1966, as attorney for Rose Chalet, Mr. Muse, after receiving the December 28, 1965 letter, wrote that "we", meaning his client and he, "believe the Licensing Board of the Town of Saugus has acted" in "good faith."

19. Being aware from reports from police officers of Rose Chalet's continued practice of allowing alcohol to be served on its premises, but without having received any complaint from any private person or public authority, the selectmen on April 28, 1966 notified Rose Chalet that it would hold a public hearing on May 3, 1966 on the matter of suspending

or revoking its common victualler's license. The notice said "This action is taken under Chapter 140, Section 9 of the General Laws."

20. Rose Chalet having protested that the April 28, 1966 notice was not sufficiently specific, the selectmen on May 5, 1966 gave notice that a hearing would be held on May 16, 1966. The notice also stated that "This action is taken under Chapter 140, Section 9 of the General Laws and is based on (1) use or consumption of alcoholic beverages on the premises contrary to previously expressed restrictions of the licensing authorities, (2) premises not available to general public as required of a common victualler, (3) contrariness with public interest in the community, and (4) failure to secure appropriate licenses covering employment of entertainment."

21. When the selectmen gave the aforesaid notice, each of them believed in good faith, whether correctly or not, that each of the grounds recited was a valid ground for the suspension or revocation of a common victualler's license, and that there would be produced at the hearing evidence in support of each such ground.

22. At the public hearing on May 16, 1966 the selectmen received evidence. Later they received a report of police officer Wing. This supplementary evidence the defendants did not draw to the attention of Rose Chalet. But in failing so to do, defendants did not intend to deny Rose Chalet a fair hearing. It did not occur to them that Rose Chalet was entitled to be apprised of this new evidence.

23. Acting upon the basis of what they heard in public and upon the basis of Wing's report, defendants Evans, Hansen, and Wagner voted on May 23, 1966 to suspend Rose Chalet's victualler's license "for four weeks, effective May 30th at 12:00 midnight through midnight June 27th." Defendants Gustafson and Reynolds voted in the negative. None of the defendants had any malice or animus toward Rose Chalet. Insofar as any of its defendants misconstrued the

law, or took into account evidence which was not offered at the hearing, or treated as grounds for suspension matters which were not germane thereto, their errors were in good faith.

24. There were in Saugus other enterprises having common victualler's licenses which either did not serve food to the public or had permitted liquor brought on the premises by patrons to be consumed there. Against none of those enterprises have the selectmen brought proceedings for revocation or suspension of a common victualler's license. It does not appear that anyone has filed against any of them a formal complaint accompanied by supporting evidence. There is no evidence that in failing to move against them the selectmen were inhibited by or actuated by any improper motive, by any purposeful discrimination in favor of them or against Rose Chalet, or by any bad faith toward Rose Chalet.

25. Rose Chalet's common victualler's license was suspended for four weeks in accordance with defendants' vote of May 23, 1966. Thereafter Rose Chalet operated under its 1966 common victualler's license.

26. Defendants issued Rose Chalet a common victualler's license for 1967. It remains in effect.

27. In their actions with respect to the suspension of Rose Chalet's common victualler's license, none of the defendants at any time had an intent to deny Rose Chalet due process of law, equal protection, or any right, privilege, or immunity under the United States Constitution, or any law.

Upon the basis of the foregoing findings, made after hearing only the plaintiff's witnesses, and without giving opportunity to defendants to call their witnesses, the question is whether defendants or any of them deprived Rose Chalet "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States, as that phrase is used in 42 U.S.C. § 1983 or conspired "for the purpose of depriving, either directly or indirectly, any person

* * * of the equal protection of the laws" of the United States, as that phrase is used in 42 U.S.C. § 1985.

### Discussion of Applicable Legal Principles

The complaint presents claims under the Civil Rights Acts of the Reconstruction Period: one claim is based on § 1 of the Act of April 20, 1871, c. 22, 17 Stat. 13, formerly codified as R.S. § 1979, 8 U.S.C. § 43, and now codified as 42 U.S.C. § 1983; the other on § 2 of the same act, formerly codified as R.S. § 1980, par. 3, 8 U.S.C. § 47(3), and now codified as 42 U.S.C. § 1985(3). We take the claims in the order just indicated.

▇ § 1983 gives a federal cause of action to a person who has been deprived of a federal right by the "purposeful" action of state officers, acting under color of state law. Snowden v. Hughes, 321 U.S. 1, 8–9, 64 S.Ct. 397, 88 L.Ed. 497. As a corollary of that principle a federal cause of action lies under § 1983 if an applicant has been denied a license, or a person has had his license suspended or revoked, aե a consequence of his having been deprived of a federal right by the purposeful action of a member of a state licensing authority. Burt v. City of New York, 156 F.2d 791 (2d Cir.); Glicker v. Michigan Liquor Control Commission, 160 F.2d 96 (6th Cir.); Hornsby v. Allen, 326 F.2d 605 (5th Cir.)

▇ In the present case, as the findings show, no plausible ground exists for the contention that defendants or any of them deprived plaintiff of a federal right when they refused to issue a liquor license to it. They did not deny it a fair hearing, take into account evidence precluded by federal law, make their decision on the basis of an arbitrary rule or practice, or discriminate against it in any invidious sense such as bias against a class, or hostility against a person, or favor due to corruption. Defendants denied the application on the merits.

With respect to the suspension of plaintiff's common victualler s license, the situation is different. There is plausible ground for the contention that at least each of the three defendants who voted for such suspension partly on the basis of the Wing report, which was not introduced in evidence, and which plaintiff was not given opportunity to examine, analyze, explain, or rebut, deprived plaintiff of due process of law under the Fourteenth Amendment to the United States Constitution. "The fundamentals of a trial were denied" when a decision was made "upon the strength of evidential facts not spread upon the record. * * * This is not the fair hearing essential to due process. It is condemnation without trial." Ohio Bell Tel. Co. v. Public Utilities Comm'n, 301 U.S. 292, 300, 57 S.Ct. 724, 728, 81 L.Ed. 1093.

▇ However, an allegation and proof that three defendants deprived plaintiff of due process of law by suspending its license on the basis of undisclosed evidence does not without something more plead or prove a valid cause of action under § 1983. What that additional element is requires careful analysis.

▇ It is indubitable that plaintiff need not allege or prove that one or more of defendants had a specific intent to deprive it of its federal rights. Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492. An action lies under § 1983 even if there is no proof of *scienter*, that is that defendant knew or had reason to know that his conduct infringed a federal right. Ibid; Hornsby v. Allen, 326 F.2d 605, 607 (5th Cir.). See Note 75 Harv.L.Rev. 40, 215. Insofar as Cobb v. City of Malden, 202 F.2d 701, 707 (1st Cir.) indicates the contrary, its authority has been dissipated by Monroe v. Pape.

More disputable is whether plaintiff needs to allege and prove as an element of a defendant's liability that he had a purpose other than that of securing appropriate action by the board of selectmen. This raises the intertwined problems of qualified privilege and abuse of privilege, or as the latter is sometimes called, bad faith.

We do not yet have from the Supreme Court a clear light, or series of lights, to mark the cases under § 1983 in which defendant's good faith is relevant.

We have been told authoritatively that defendants' good faith is irrelevant if under color of state law they deny to Negroes on account of their race the right to vote in a primary. Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L. Ed. 987. Damages were recognized as proper even though the public officials, relying on an earlier Supreme Court decision Grovey v. Townsend, 295 U.S. 45, 55 S.Ct. 622, 79 L.Ed. 1292, acted in the wholly justified belief that they were carrying out their duties in a constitutional manner. See P. Freund, Judge Magruder—Federalism, 72 Harv.L.Rev. 1204, 1218.[1]

Where there is no purposeful or invidious discrimination against a race or other class of persons, the Supreme Court has not furnished precedents interpreting § 1983 from which generalizations can be drawn safely in 1967.[2] Lower federal courts have held that where plaintiff brings an action under § 1983 against a defendant police or other official on the ground that defendant by arresting, searching, or taking other police action deprived him of his federal constitutional right, § 1983 does not require that plaintiff allege or prove that defendant abused a privilege or acted in bad faith.[3] Stringer v. Dilger, 313 F.2d 536 (10th Cir.); Anderson v. Haas, 341 F.2d 497 (3rd Cir.). See Note 75 Harv. L.Rev. 40, 214. The cases just considered seem to stand for the proposition that since plaintiff in a state court action complaining of a battery or a trespass need not allege or prove defendant's bad faith, plaintiff in a § 1983 federal action need not plead or prove bad faith when he complains of what is in substance a battery or trespass.

Here we are faced with the converse of the battery or trespass situation, inasmuch as in a state tort action based on failure to grant a fair hearing plaintiff could not recover unless he pleaded and proved that defendants acted in bad faith. That is, if this were a state tort action by a licensee against a member of a licensing board which had suspended

---

1. From Smith v. Allwright it might be reasonable to derive a broad principle that good faith is not relevant, and that no privileges, qualified or otherwise, exist where defendants' conduct involves invidious discrimination against any race or perhaps against in favor of any class of persons. See Note 68 Harv.L.Rev. 1229, 1236. Such a principle would go far to explain the result, though not the rationale, in Hornsby v. Allen, 326 F.2d 605, 607 (5th Cir.). That case upheld a complaint claiming a cause of action under § 1983 against liquor licensing authorities who followed "a system of ward courtesy * * * in the issuance of liquor licenses; under this system licenses allegedly would be granted only upon the approval of one or both of the aldermen of the ward in which the store was to be located" (p. 607). Another way of explaining Smith v. Allwright and Hornsby v. Allen is that, properly analyzed, the complaint in each case alleged a "purposeful" discrimination.

2. In 1951 the Court held that no action under that section lay against state legislators who were acting in a field where legislators traditionally have power to act; the reasons being that they had an absolute privilege, and that such privilege was not destroyed even if their motives were improper. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019. But from that case it would not be prudent to infer that, except for racial and class discriminations, the federal remedy available under § 1983 is circumscribed by local law. See Note, 75 Harv. L.Rev. 40, 214.

3. This does not imply that the mental state of the defendant is necessarily irrelevant to the action. Plaintiff's allegation, for example, that he was arrested in violation of the United States Constitution may permit defendant to raise an issue as to his state of mind when he arrested plaintiff. A police officer who *bona fide* upon reasonable grounds believes that a felony has been committed does not violate the Constitution when without legal process he arrests an innocent man. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; Stephens v. United States, 106 U.S.App.D.C. 249, 271 F.2d 832. See Prosser, Torts, 3rd ed., p. 135.

plaintiff's license, among the elements which plaintiff would be required to plead and prove would be not only that procedurally or substantively the suspension was wrongful, but also that defendant acted primarily for a purpose other than that of securing appropriate action by the licensing authority. See Restatement, Torts § 680; Prosser, Torts, 3rd ed. 875. Cf. Stewart v. Sonneborn, 98 U.S. 187, 25 L.Ed. 116; Malone v. Belcher, 216 Mass. 209, 103 N.E. 637, 49 L.R.A.,N.S., 753. Plaintiff would have the burden of alleging and establishing that defendant did not act in good faith performance of his official duty as he understood it.[4]

Inasmuch as plaintiff would not have a state tort cause of action against defendants unless it alleged and proved bad faith, there is much to be said for the contention that it ought not to have *for the type of constitutional deprivation here involved* a federal cause of action under § 1983 unless it alleges and proves bad faith. This would be consistent with Justice Douglas's test in Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 that 42 U.S.C. § 1983 "should be read against the background of tort liability." See Cobb v. City of Malden, 202 F.2d 701, 707 (1st Cir.); Francis v. Crafts, 203 F.2d 809, 811 (1st Cir.). Cf. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019.

Indeed were this Court to hold that a federal action for damages or an injunction lay every time a state administrative authority made an error of federal constitutional significance, regardless of good faith, the consequences would be staggering. A sufficient illustration is furnished by Ohio Bell Tel. Co. v. Public Utilities Comm'n, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093, already cited. If the members of the Ohio Public Utilities Commission were in good faith in relying on information from the Commission's files not adduced at the hearing, surely the Ohio Bell Telephone Company was not entitled under § 1983 to secure an injunction in the United States District Court to restrain the members from ordering the telephone company to make a refund to its patrons. There was no occasion to supplement the review of administrative action available in the state courts and on appeal in the Supreme Court of the United States. Surely the members of the Commission, if they were in good faith, were not personally liable to the telephone company for the thousands of dollars which a constitutionally invalid refund order may have cost the company.

■ In short, it is the conclusion of this Court that where a plaintiff complains that a member of a state licensing authority has deprived it of procedural due process by considering material not produced at a hearing, plaintiff cannot maintain an action under § 1983 unless it both pleads and proves that the member acted primarily for a purpose other than that of securing appropriate action by the authority.

It is unnecessary to consider whether to secure an injunction or damages under § 1983 a plaintiff must plead or prove that a member of a licensing authority had an improper purpose if the constitutional deprivation of which plaintiff complains is that the member is or was enforcing a state law, regulation, or custom which on its face or as applied denies substantive due process. See

---

4. Insofar as Cobb v. City of Malden, 202 F.2d 701, 707 suggested that the burden would be on the defendant to show that he acted in good faith, the case seems unsound, and to have confused an action for abuse of official process with tort actions such as libel and interference with advantageous contractual relations where it is proper to place on defendant the burden of alleging and proving privilege, and on plaintiff the burden of alleging and proving abuse of privilege. See O. W. Holmes, Privilege, Malice, and Intent, 8 Harv.L.Rev. 1; Prosser, Torts, 3rd ed. pp. 823, 967; Restatement, Torts, §§ 585–598, 766, 767; Aikens v. State of Wisconsin, 195 U.S. 194, 204, 25 S.Ct. 3, 49 L.Ed. 154.

Hornsby v. Allen, 326 F.2d 605 (5th Cir.). Whether a state licensing authority which, for example, denies a plaintiff freedom of speech or press or assembly is, in the absence of bad faith, subject to damages as well as an injunction under § 1983 is not now before this Court. Cf. Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

Inasmuch as in its findings of fact this Court determined that defendants acted in good faith when they considered the Wing report, and that the three defendants who voted to suspend plaintiff's common victualler's license acted in good faith, plaintiff has failed to prove its claim under § 1983.

■■ Plaintiff stands no better with respect to its claim under § 1985. Under 42 U.S.C. § 1985 plaintiff alleges a conspiracy to deprive the plaintiff of equal protection of the laws. This claim falls because there is no proof that plaintiff was deprived of equal protection of the laws: both with respect to its application for a liquor license and the suspension of its common victualler's license it was treated without invidious or purposeful discrimination. Even if there had been discrimination plaintiff could not have succeeded under § 1983 since it did not show that two or more defendants shared a purpose to deny plaintiff its constitutional rights. Hoffman v. Halden, 268 F.2d 280, 292 (9th Cir.); Birnbaum v. Trussell, 347 F.2d 86, 89 (2nd Cir.).

Out of an abundance of caution, this Court states that it has not determined whether the selectmen of Saugus wisely exercised their discretion in denying or suspending licenses, or whether they are correct in supposing that under Massachusetts law they had a legal right to suspend Rose Chalet's common victualler's license. The gist of what this Court has concluded is that defendants acted in good faith.

Complaint dismissed.