**UNITED STATES of America,
Appellee,**

v.

**James Arthur WILLIS, Appellant.**

**No. 72–1704.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1973.

Decided June 29, 1973.

Rehearing and Rehearing En Banc Denied
Aug. 20, 1973.

James R. Wyrsch, Kansas City, Mo., and Thomas E. Joyce, Kansas City, Kan., for appellant.

Frederick W. Read, III, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before GIBSON, HEANEY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This is an appeal from the judgment of conviction, after a jury verdict, finding James Arthur Willis guilty of violating the provisions of 18 U.S.C. §§ 2421 and 1952. We affirm.

Willis was tried on a two count indictment: 1) transporting two women, Rose Marie Williams and Raydene Murray, in interstate commerce for the purpose of prostitution in violation of 18 U.S.C. § 2421, and 2) having traveled and caused travel in interstate commerce to facilitate prostitution enterprises illegal under state law in violation of 18 U.S.C. § 1952. The Government's bill of particulars alleged with respect to count 2 that appellant transported Rose Marie Williams, Raydene Murray, Hattie Mae Diamond, and Sandy Terrazas interstate to facilitate unlawful prostitution enterprises. In general, the Government sought to prove transportation between Missouri, Kansas, Texas, and Louisiana. Willis was a nightclub operator in Kansas City, Kansas.

Willis rests his appeal on six asserted grounds of error:

1.  Pre-indictment delay caused substantial prejudice to Willis' right to a fair trial.

2.  Certain cross-examination of Willis was prejudicial and improper.

3.  The testimony of one witness (McCullough) was not relevant or material.

4.  The witness Murray was improperly allowed to invoke her fifth amendment right not to answer incriminating questions in front of the jury.

5.  It was error to admit into evidence the arrest record of Hattie May Diamond and a bail bond slip signed by Willis.

6.  The statutes upon which the prosecution was based invidiously discriminate against males.

We have examined the first, third and sixth allegations of error, and after a full reading of the record and study of the applicable law conclude they are without merit. Discussion of these allegations would serve no useful purpose and would unduly extend the length of this opinion. Consequently we will limit discussion to the second, fourth, and fifth assertions of error.

### Cross-examination of Willis

■ During the direct examination of Willis it was learned that he had employed Rose Marie Williams and Raydene Murray at the Casa Blanca Club in 1968. On cross-examination Willis stated that he had paid Williams $15 per day plus tips, but could not remember how much he had paid Murray. Government counsel asked Willis if he had paid either woman $8,000 in 1968. Willis could not recall as to Murray, and indicated doubt as to Williams. Willis also could not recall whether he had told his accountant to prepare *1968* individual income tax returns for the two women reporting income of $8,000 each. At this point defense counsel objected, indicating that the returns were not prepared by Willis, not filed, and not signed. The court overruled the objection.

Government counsel then handed to Willis two individual tax forms for *1969* made out for Williams and Murray. Willis examined the forms and indicated that he probably directed the accountant to prepare the return for Murray, but he could not be sure as to Williams. Willis further indicated that if the records indicated that he paid the women $8,000 that was what they were paid. The returns were never placed in evidence.

Willis' main objection to this cross-examination is that it purportedly related to evidence of an unrelated crime. Of course, such cross-examination would have been improper. The simple answer

to Willis' contention is that there was nothing in the colloquy between Willis and the Government's counsel which might conceivably raise an inference of tax evasion. In fact the whole thrust of the Government's cross-examination was that the tax returns properly represented the sums paid to the women. Therefore, *South v. United States*, 368 F.2d 202 (5th Cir. 1966), is not "squarely on point with the facts" as Willis argues. In *South* the Government used the *defendant's* low reported income to buttress its claim that he must have engaged in gambling since he was able to support his family despite a meager income. The Court reversed the conviction, (for using the mails in furtherance of illegal gambling), partly because it was convinced that such evidence tended to demonstrate the defendant's guilt of the unrelated crime of failing to report his true income. No such inference could possibly be drawn in this case.

■ Willis also argues that the cross-examination was improper because:

1. the cross-examination was based upon tax returns which were never introduced into evidence. *See* McKenna v. United States, 232 F. 2d 431, 437 (8th Cir. 1956); United States v. Sawyer, 469 F.2d 450, 452 (2d Cir. 1972); Robbins v. Small, 371 F.2d 793, 795 (1st Cir.), cert. denied, 386 U.S. 1033, 87 S.Ct. 1483, 18 L.Ed.2d 594 (1967).

2. the cross-examination, and presumably the tax returns were, "irrelevant, incompetent, immaterial and collateral to the issues";

3. the cross-examination exceeded the scope of direct examination as the tax returns related to 1969, but the direct examination related only to 1968. *See* United States v. Hiken, 458 F.2d 24, 26 (8th Cir.), cert. denied, 409 U.S. 842, 93 S.Ct. 41, 34 L.Ed.2d 81 (1972).

■ We have serious doubts as to the propriety of this cross-examination which was based upon tax returns never admitted into evidence, particularly when the returns were never signed, never filed, and were unrelated to the taxable year under examination. However, this Court has long held that:

> "The fact that the cross-examination of a defendant exceeded the bounds of propriety does not call for reversal unless it was prejudicial and amounted to a denial of some substantial right of the defendant." Davis v. United States, 229 F.2d 181, 186 (8th Cir.), cert. denied, 351 U.S. 904, 76 S.Ct. 706, 100 L.Ed. 1441 (1956).

Assuming the cross-examination was improper, we believe beyond a reasonable doubt [1] that it was harmless error for the trial judge to allow it. *See generally* Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Schneble v. Florida, 405 U.S. 427, 92 S. Ct. 1056, 31 L.Ed.2d 340 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); F.R. Crim.P. 52(a); 3 C. Wright, Federal Practice and Procedure §§ 851–855 at 350–372 (1969).

First, with regard to Murray, the tax returns and the examination of Willis demonstrated no more than that she was paid $8,000 for full-time legal employment. The inference to be drawn from the examination is neutral, and perhaps beneficial to the defense. We fail to understand what the Government was trying to prove by this examination, but

---

1. Although Willis does not phrase his argument in such terms, we have approached this question as if he alleged error touching some constitutional deprivation as opposed to error lacking constitutional dimensions. *Compare* Kotteakos v. United States, *infra*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 *with* Chapman v. California, *infra*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

**1038**

cannot conceive that it harmed Willis in any way.

Second, as to Williams, the Government apparently sought to suggest that she was paid an exorbitant amount of money for part-time work, thus tending to prove that she was paid by Willis for illicit activity. Williams had already testified at great length that she worked as a prostitute for Willis. Charles Hubbard, an employee of Willis during part of the time in question, testified that he saw Willis give Williams, Murray and a woman by the name of Pat, money. He further testified that the women gave Willis money. Moreover, he testified that he had personal knowledge that prostitution was going on where Willis resided. In light of this strong eye witness testimony, it is a remote possibility, at the very best, that the cross-examination relating to the tax returns influenced the jury insofar as whether they believed Williams worked as a prostitute for Willis.

Furthermore, defense counsel could have obviated any impact, no matter how slight, this cross-examination might have had on the jury. The Government's argument was apparently that Mrs. Williams was paid an exorbitant amount of money in 1968 for part-time work, thus tending to prove payment by Willis for prostitution. The factual predicate for this suggestion was that the tax returns purportedly related to 1968. In fact, the tax returns related to 1969. Therefore, there was no valid basis upon which to analyze Williams' income in 1968. Defense counsel saw the returns prior to their use during a bench conference. After the cross-examination was over, defense counsel approached the bench and informed the court that the tax returns were for 1969. The prosecutor indicated that he was genuinely surprised. The trial court asked whether defense counsel wanted the jury informed of this fact. Counsel said, "I just wanted to make a record on it because we asked for a mistrial." Tr. 479. Had the jury been informed of this fact, at that time, whatever infer-

ence the Government sought to suggest would have been destroyed. While we do not fault counsel for making a "record", we are somewhat hesitant to hear Willis' complaint, since a strong argument could be made that a "defendant will not be heard to complain when he fails to avail himself of a proper remedy because he wanted more than offered." United States v. Akin, 464 F.2d 7, 8 (8th Cir.), cert. denied, 409 U.S. 981, 93 S.Ct. 315, 34 L.Ed.2d 244 (1972). We have fully considered Willis' argument, and as previously stated, in spite of the possibly erroneous use of the return by an overzealous prosecutor, we find the purported error to have been harmless beyond a reasonable doubt.

*Murray's invocation of self-incrimination privilege in front of the jury.*

Raydene Murray was called by the Government in its case in chief as a witness. Her answers to the Government's questions were apparently not what Government counsel expected to hear. Government counsel finally asked:

"Why did you take Rose Marie Williams to Leesville, Louisiana? All I want is the truth." Tr. 290.

Defense counsel asked the question be stricken and the trial court so ordered. At that point defense counsel asked to approach the bench. A conference was held, and defense counsel asked the witness be informed of her privilege not to incriminate herself. The trial court, in the presence of the jury and without objection from defense counsel, then informed the witness of her privilege and asked if she wanted to consult with counsel. She requested the services of a lawyer. An attorney from the Federal Public Defender office was appointed to consult with Murray and he did. After that consultation the Government prepared to recall her, informing the trial court and the defense that the Government was prepared to offer Murray immunity. Counsel for the defense objected to such a procedure if it was to be held in front of the jury. The trial

court indicated, "I think we are going to have it in front of the jury so they will understand what is going on." Tr. 332. The court concluded that he could conceive of no prejudice to the defendant. Under the circumstances of this case we agree with the trial court's conclusion.

Willis' objection to this procedure is that the jury must have thought the witnesses' invocation of the privilege was an admission of guilt tending to implicate Willis. It must be emphasized that there is no evidence and no contention that the Government expected the witness to invoke the privilege. In fact Government counsel indicated that Murray had been advised of her rights, and on every prior occasion had indicated that she would testify voluntarily. Perhaps most importantly Murray's testimony dispelled any idea that her invocation of the privilege was an implicit indictment of Willis. After she had invoked the privilege and had been granted immunity she testified:

"Q. [M]r. Willis didn't ask you to transport Marie—Rose Marie Williams to Leesville?

A. It was her idea. Tr. 336

. . . . . .

Q. All right, Did you work as a prostitute . . .

A. No.

Q. In Kelly's bar?

A. No.

Q. Did you work as a prostitute in Leesville, Louisiana . . .

A. No.

Q. In January of 1968?

A. No. Tr. 349.

. . . . . .

Q. Have you ever seen Rose Marie Williams give money to Jimmy Willis?

A. No.

Q. Have you ever given money to Jimmy Willis under any circumstances?

A. No. Tr. 361

. . . ."

In closing argument defense counsel was quick to use the Government's embarrassing position:

"And remember the other girl who was talked about by Rose Marie Williams, what was her name? Raydene Murray. She testified in here and was granted immunity, the government said, 'Nothing can happen to you. You just sit up here and tell the truth.' She was sworn and she denied that Jimmy Willis had anything to do with the prostitution activity and she had nothing to fear because the government said, 'We are not going to go after you for these prostitution activities.'" Tr. 507.

Furthermore, had Murray's testimony been damaging she was subject to being fully cross-examined. Finally, we note, without attaching a great deal of significance to the point, that it was defense counsel who precipitated informing Murray of her rights.

Willis primarily relies on United States v. King, 461 F.2d 53 (8th Cir. 1972). This case is far removed from the facts of King. In King the Government deliberately called two witnesses knowing they would invoke the privilege and no immunity was granted. This difference renders King totally inapplicable to the facts of this case. See generally Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963); Gerberding v. United States, 471 F.2d 55, 59–60 (8th Cir. 1973); United States v. McKuin, 434 F.2d 391, 397–398 (8th Cir. 1970), cert. denied, 401 U.S. 911, 91 S.Ct. 875, 27 L.Ed.2d 810 (1971).

*Admission of arrest record and bail bond receipt.*

The Government, over a relevancy objection,[2] was allowed to introduce into evidence the arrest record of Hattie Mae Diamond for investigation of soliciting

---

2. "The other objection that we have is to the probative value of . . . an arrest record of Hattie May Diamond and a bond receipt allegedly signed by James Willis." Tr. 261.

prostitution and vagrancy, and a bail bond slip signed by Willis. The parties had stipulated that the records were business records of the Kansas City, Kansas, police department.

■ Willis objects to this evidence because of a lack of a proper foundation, although he did not specify this as a ground for objection at the time the evidence was offered. Foundation objections require specificity. Reversal is not required with regard to alleged improper admission of exhibits without sufficient foundation, in the absence of a specific objection on foundation grounds. United States v. Dixon, 446 F.2d 224 (9th Cir. 1971). *See also* Price v. United States, 464 F.2d 1217, 1218–1219 (8th Cir.), cert. denied, 409 U.S. 1040, 93 S.Ct. 522, 34 L.Ed.2d 489 (1972) ; 1 J. Wigmore, Wigmore on Evidence § 18 at 339–340 (3 ed. 1940).[3]

■ The question of relevancy is properly presented, and we believe the evidence was relevant. It was obviously relevant for the Government to demonstrate a symbiotic or dependent relationship between Willis and the women involved. This evidence tends to prove just such a relationship. The arrest record by itself would not have been relevant. United States v. Davis, *supra*, 229 F.2d at 185. But the bail bond receipt and the arrest record establish Hattie Mae Diamond's dependence upon Willis. In this sense, the documents taken together, are relevant.

■ Willis asserts that this evidence had the tendency of unfairly associating him with an unrelated crime. The simple answer to Willis' argument is that Willis' activity in signing the bail bond receipt was clearly not criminal. In any event the evidence, as we have said, was relevant. It was the trial judge's duty to weigh the relevance of the evidence against the possibility of prejudice:

"This balancing of intangibles—probative values against probative dangers—is so much a matter where wise judges in particular situations may differ that a leeway of discretion is generally recognized." C. McCormick, Evidence § 152 at 320 (1954). *See also* 1 J. Wigmore, Wigmore on Evidence § 28 at 409–410 (3 ed. 1940).

And as this Court has often said:

"Generally speaking the admissibility of evidence is a question within the discretion of the trial court, and a court of appeals will confine its inquiry to whether there was an abuse of that discretion." United States v. Skillman, 442 F.2d 542, 551 (8th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971).

We find no abuse of discretion as to this evidence.

For the reasons hereinbefore expressed the judgment of conviction is affirmed.

---

3. Willis argues that the Government failed to establish that the Hattie Mae Diamond referred to in an arrest record was the same woman referred to in the Government's bill of particulars, but Willis later testified that she was.