**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ernest Timothy HARRIS et al.,**
**Defendants-Appellants.**

**Nos. 74-1590-74-1592.**

United States Court of Appeals,
Tenth Circuit.

Argued May 1, 1975.

Decided Dec. 3, 1975.

Argued and Submitted on Rehearing
March 23, 1976.

On Rehearing May 18, 1976.

Raymond W. Baker, Wichita, Kan., for defendants-appellants.

Stephen K. Lester, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., Wichita, Kan., on the brief), for plaintiff-appellee.

Before HILL, SETH and McWILLIAMS, Circuit Judges.

HILL, Circuit Judge.

This appeal results from the convictions of the three appellants on charges stemming from an alleged interstate prostitution operation. Appellant Harris was convicted on all six counts of the indictment.[1] Appellant Street was convicted on Counts I, III, IV, and VI. Appellant Cline was convicted on Counts I and VI.

Because of our disposition of this matter, we need not detail the facts concerning the offenses. Rather, the matters which are determinative of this appeal center around items admitted into evidence which appellants argue should have been suppressed as fruits of an illegal search and seizure. The facts relevant to those contentions are detailed below.

On June 16, 1972, two undercover Maryland state troopers went to the house of ill-repute involved in this case, "Mitchell's Farm." After giving false information concerning their identities, the troopers were admitted. During their two-hour stay, one trooper purchased beer and was solicited by one of several scantily-attired females; the other trooper engaged in a card game and lost some money. The two men were invited to return and to bring their friends.

One week later, the two troopers returned with two other undercover officers. The plan developed by law enforcement officers was that these four would gain entry and the rest of the raiding party would later enter and make arrests. If no illegal activity were found by the four agents, they were to call and cancel the raid. Illegal activities, however, flourished at Mitchell's Farm. About 12:30 a. m., the raiding party made its entrance, without arrest or search warrants.

In the raiding party was Trooper Lincoln, whose job was to secure rooms on the second floor until such time as officers had authority to search. Entering the upstairs hall, Lincoln observed a black male, later identified as appellant Street. Lincoln yelled for Street to stop and identified himself as an officer of the law. Street ran into a bedroom and locked the door. Lincoln and another officer forced open the door and entered the bedroom. Street was going out the window when the officers apprehended him. A search right around the window revealed a pistol and some marijuana. After Street was removed from the bedroom, Lincoln found a photograph album, Government's Exhibit 71, protruding about an inch or so from underneath one of the night stands. Appellant Cline and her husband gave consent to search at 2:07 a.

1. Count I of the indictment alleged a violation of 18 U.S.C. § 371 (conspiracy). Count II alleged a violation of 18 U.S.C. § 2423 (coercion or enticement of minor female for prostitution, debauchery or other immoral purpose) and 18 U.S.C. § 2 (aiding and abetting). Count III alleged a violation of 18 U.S.C. § 2421 (interstate transportation of a female with the intent and purpose to induce, entice, and compel her to become a prostitute and give herself up to debauchery and to engage in other immoral practices) and 18 U.S.C. § 2. Count IV alleged a violation of 18 U.S.C. § 1952 (interstate racketeering) and 18 U.S.C. § 2. Count V alleged another violation of 18 U.S.C. § 2421 (interstate transportation for purpose of prostitution, debauchery and other immoral purpose). Count VI alleged a violation of 18 U.S.C. § 1584 (involuntary servitude) and 18 U.S.C. § 2.

m.; a general search of the premises was made.

Appellants first contend that the photograph album (Exhibit 71) and testimony regarding the other items (the pistol and marijuana) were the fruits of an illegal search and seizure and should have been suppressed. Appellants also contend that the trial court abused its discretion in admitting Exhibit 71; they contend the prejudicial effect of that exhibit far outweighed any relevancy it possessed.

It is impossible for us to say that this latter contention has no merit. This Court does not have Exhibit 71 before it because the exhibit was lost, apparently during transmittal from the office of the Clerk of the United States District Court for the District of Kansas to the office of the Clerk of this Court. Because we cannot review the exhibit itself for the alleged unacceptable prejudicial effect, a remand is required as to all appellants.

Because a remand is necessary, there is no need to consider sufficiency of the evidence arguments raised by appellants. Good judicial husbandry, however, demands that this Court resolve the Fourth Amendment questions concerning the testimony about the pistol and marijuana.

Appellants present one basic attack on the search and seizure. "Whether or not the officers who raided 'Mitchell's Farm' on June 24, 1972, should have first obtained a warrant?" They contend Lincoln had no legal right to be there because this was a warrantless search and no exigent circumstances are shown by the government. The government answers that a search warrant was not needed because Mitchell's Farm was a public place and the officers entered to make arrests, not to search the premises. The government's position is that these items were in plain view and were seized incident to a lawful arrest.

■ The Fourth Amendment reads in pertinent part as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." Consequently, we must determine if the law enforcement officers' actions were reasonable here. Clearly, there was time to get arrest and search warrants before the raid. In this case, we are dealing with a public place and not a dwelling. As the government points out, Mrs. Cline allowed any "horse walker" (the fake identity one undercover agent used) who came to her door to enter and engage in several activities along with other patrons. There is, however, no doubt that the better practice would have been for the raiding party to secure warrants before coming to Mitchell's Farm.

■ Having noted these factors, we cannot agree with that part of appellants' argument in which they contend that an arrest warrant must always be secured where no reason appears why it could not have been obtained. In *Dorman v. United States*, 140 U.S.App.D.C. 313, 435 F.2d 385 (1970), the court stated, "The Fourth Amendment provides protection even as to arrest in a public place, though in such cases the requirement is only that there be probable cause and there is no additional requirement of recourse to a warrant."

The *Dorman* decision relied on *Ford v. United States*, 122 U.S.App.D.C. 259, 352 F.2d 927 (1965). *Ford* presented a situation where persons were arrested in a car, probable cause was not disputed and warrants had not been obtained. In determining the arrests were proper and evidence seized incidental to the search was admissible, the court stated:

We find no case holding that a warrantless arrest in a public place for a felony, supported by probable cause, offends the standard of validity prescribed by the Fourth Amendment. The standard is reasonableness. . . . In *Draper v. United States*, 358 U.S. 307 [79 S.Ct. 329, 3 L.Ed.2d 327] . . . a warrantless arrest on probable cause was sustained notwithstanding it appears there was time to obtain a warrant.

*Ford v. United States, supra.*

The Supreme Court has not made a definitive statement on the subject. In discuss-

ing a forceful nighttime entry into a dwelling to arrest a person reasonably believed within, upon probable cause that he had committed a felony, where no reason appeared why an arrest warrant could not have been sought, the Court pointed to *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), and said that case ". . . certainly stands by negative implication for the proposition that an arrest warrant is required in the absence of exigent circumstances." *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The Court proceeded to recognize the District of Columbia Circuit's acceptance of that rule in *Dorman* but declined to decide the question in the case then before the Court. In *Dorman*, that court noted that a greater burden was placed on officials who enter a home without consent than in other types of entries.

■ Here a public place is involved. The entry of the officers was for the purpose of making arrests; they intended to seek consent to search, and, after effectuating the arrests, did receive that consent. We do not believe the single factor that time was available to obtain warrants before entering to make the arrests causes the entrance into Mitchell's Farm and the subsequent search incident to an arrest to be unreasonable. This does not mean that this type of police conduct is desirable. Rather, we simply do not deem it unconstitutional in this case. This is not a case where this Court's supervisory authority is invocable, as state officials are involved.

■ Appellants cite many cases dealing with the necessity for search warrants unless exigent circumstances are present. In the instant case, the officers entered to make arrests. Their entry without warrant was reasonable as this was a public place and probable cause existed. The pistol and marijuana were seized in a search incident to an arrest. The constitutionality of searches incident to lawful arrests is well established. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

Appellants also cite *United States v. Resnick*, 455 F.2d 1127 (5th Cir. 1972), as supporting the requirement of warrants—arrest and search—in the absence of exigent circumstances. *Resnick* involved a series of three warrantless searches. The court pretermitted decision concerning the validity of the first search and held the government had not met its burden of bringing the second and third searches and the subsequent seizures within one of the exigencies justifying proceeding without prior approval by a judicial magistrate. In that case, agents entered a fenced area three times and made observations from vantage points inside the fenced tract. Following the third warrantless search, the men inside the area directed other law enforcement people to raid the building. Arrests and seizures followed. We think these facts are distinguishable from those present in our case and certainly present a higher degree of unreasonableness.

Upon remand, oral testimony concerning the marijuana and the pistol will not be excluded on the ground that it would be fruit of an illegal search and seizure.

Appellant Street urges that he was entitled to a directed verdict as to Count IV of the indictment (interstate racketeering). That count reads as follows:

On or about May 20, 1972, in the District of Kansas,

ERNEST TIMOTHY HARRIS,
JAMES LOGAN,
ALPHONSO NEPHEW,
REED ALEXANDER STREET, a/k/a
REED ALEXANDER LARUE,

traveled in interstate commerce from Junction City, Kansas, to Harford County, Maryland, with intent to:

(1) Distribute the proceeds of an unlawful activity, to wit: prostitution, in violation of the laws of the State of Maryland;

(2) Commit crimes of violence to further the unlawful activity of prostitution; and

(3) Otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of the unlawful activity of prostitution,

and did thereafter perform and attempt to distribute the proceeds of the unlawful activity of prostitution, commit crimes of violence to further the unlawful activity of prostitution, and otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of the unlawful activity of prostitution, in violation of 18 U.S.C. 1952 and 18 U.S.C. 2.

The trial court ordered the United States Attorney to inform Street whether the proof for Counts III, IV and VI would indicate Street acted as a principal or merely aided, counseled, commanded, induced or procured the commission of these offenses. The United States responded that as to Count III the jury could determine Street acted more as an aider and abettor. The apparent effect of this response was that Street was considered to have acted as a principal in Counts IV and VI.

Appellant Street argues:

Having elected to charge [him] as a principal, the Government was obliged to prove that he had traveled in interstate commerce on the date specified in the Indictment. There being no evidence that he traveled in interstate commerce as alleged in the Indictment, Street is entitled to have the Count dismissed.

The appellee does not contend any evidence was produced that Street did travel in interstate commerce on that date. Appellee argues Street was well aware of the evidence confronting him and a determination of aider and abettor or principal is an academic exercise.

■ The overt acts alleged in the conspiracy count of the indictment indicated the general role of each party in the transaction subsequently alleged in Count IV. One alleged overt act was that "[o]n or about May 21, 1972, at Baltimore, Maryland, REED ALEXANDER STREET, a/k/a REED ALEXANDER LARUE gave ERNEST TIMOTHY HARRIS and ALPHONSO NEPHEW money." Appellant claims no prejudice but simply urges an irrevocable election by the government which required proof Street acted as a principal. It is well settled, however, ". . . that a variance between the proof and the bill of particulars is not grounds for reversal unless the appellant is prejudiced by the variance." *United States v. Glaze,* 313 F.2d 757 (2d Cir. 1963). We believe Street was aware of the proof to be adduced against him and was not prejudiced by any variance between the bill of particulars and the proof. Proof of actual travel in interstate commerce by him was not necessary to his conviction under Count IV.

The judgment of conviction as to each of the defendants-appellants is set aside, and the cases are remanded for a new trial and such further proceedings as may be appropriate.

### OPINION ON REHEARING

### PER CURIAM.

Following issuance of the Court's prior opinion in these cases, Stephen K. Lester, an Assistant United States Attorney, contacted the F.B.I. agent in charge of this case; Lester informed the agent of the basis of our decision. In an affidavit submitted to this Court, Lester stated on December 10, 1975, he received 146 black and white photographs from the F.B.I.; Lester recognized these photographs as copies of the color photographs which were in the missing Exhibit 71. Nine of the exhibit's 155 photos had not been copied; writing on the back of the 146 copies did not appear on the originals. Lester concluded his affidavit by stating, "Other than the fact that the attached 146 photographs are not in color, they accurately reflect the contents of Government's Exhibit 71."

On December 22, 1975, this Court, by order, permitted supplementation of the record on appeal by the government. The 146 photographs and the Lester affidavit were filed. The Court, on its own motion, ordered a limited rehearing; the rehearing was to concern the issues relating to admissibility of Exhibit 71 and whether the record, as supplemented by the government, is sufficient to permit this Court to determine the relevancy and materiality of the exhibit vis-a-vis its prejudicial effect.

The rehearing has been held and it is our conclusion the record as supplemented is sufficient to permit this Court to determine the issue of the alleged unacceptable prejudicial effect of Exhibit 71.[1] Thus, a new trial because of the missing exhibit is no longer required. We must, however, determine the issues raised in the original briefs filed in this case and not addressed in our previous opinion.

 Appellants raise numerous contentions concerning the admissibility of Exhibit 71. These contentions present questions concerning the sufficiency of foundation evidence, the exhibit's relevancy, and the weighing of that relevancy, if any, against possible prejudice to appellants from the exhibit's admission. All three matters are within the sound discretion of the trial court, and we can reverse only for an abuse of that discretion. *Young v. Anderson*, 513 F.2d 969 (10th Cir. 1975) (determination of relevancy); *United States v. Willis*, 482 F.2d 1034 (8th Cir. 1973), *cert. den'd*, 414 U.S. 1112, 94 S.Ct. 841, 38 L.Ed.2d 738 (weighing of prejudice against relevancy); Gard, Jones on Evidence § 17.-51 at 354 (6th ed. 1972) (sufficiency of foundation evidence). Having viewed the copies of the photographs and considered the record, we cannot say the trial court abused its discretion in the admission of Exhibit 71. The purpose of the admission of the photographs in Exhibit 71 was not a purpose which required stringent standards of foundation and authenticity evidence. Many of appellants' complaints actually go to the weight the jury should give the photographs. To the extent pictures containing none of the appellants or witnesses are included in the exhibit, any error in admitting those would necessarily be harmless. The jury had seen the appellants and the witnesses and could have discerned in which photos these persons were not present. We do not believe these photos were of a nature to inflame the passions and prejudices of the jury against the appellants. The rele-

vancy of the exhibit in showing the relationship of the parties (especially as these issues related to the involuntary servitude count) and in countering certain testimony of appellants Harris and Street as to their general unfamiliarity with activities at Mitchell's Farm would outweigh any passion and prejudice engendered by the pictures. The trial court did not err in admitting Exhibit 71.

 Appellants raise numerous contentions concerning the sufficiency of the evidence. In determining these challenges, we must view the evidence in the light most favorable to the government to decide if there is sufficient substantial proof, direct and circumstantial, together with reasonable inferences to be drawn therefrom, from which a jury might find these appellants guilty beyond a reasonable doubt. *United States v. Downen*, 496 F.2d 314 (10th Cir. 1974), *cert. den'd*, 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142; *United States v. Yates*, 470 F.2d 968 (10th Cir. 1972).

 Appellants argue the evidence was insufficient as to the conspiracy count because there was no proof of an agreement among the appellants to violate the laws of the United States. The alleged conspiracy involved violations of 18 U.S.C. §§ 1584, 1952, 2421, 2423 (footnote 1 of the original opinion describes these statutes). The overt acts alleged set forth the basic outline of the scheme, and we set out some of those overt acts to give the factual context of our decision. In the spring of 1972, appellant Harris asked one Cookie Martinez to prostitute herself and turn over all monies she earned to him. In May, 1972, Martinez was taken from Junction City, Kansas, to Kansas City, Missouri, by Harris, one James Logan, and one Alphonso Nephew; Harris, Nephew and Martinez flew from Kansas City, Missouri, to Baltimore, Maryland. Appellant Street met the trio at Baltimore and gave money to Harris and Nephew (allegedly their shares of the earnings from the Mitchell's Farm enterprise accumulated

---

1. We have considered the arguments raised in appellants' "Motion to Suppress" and find them unconvincing.

in their absences). Martinez was taken to Mitchell's Farm and was beaten by Harris. Martinez began prostituting herself at Mitchell's Farm with all monies being collected by appellant Cline who divided them with Harris, Nephew and Street. Harris and Martinez subsequently traveled to Wichita, Kansas, via Chicago, Illinois, and Martinez performed acts of prostitution in Chicago and Wichita.

Appellants claim a conspiracy was not proven because Harris and Cline did not know each other before Harris arrived in Maryland; consequently, if Harris and Cline conspired they had to conspire through Street. Thus, they argue, there had to be evidence of communication between Street and Harris prior to May, 1972. Appellants admit there was testimony of a phone call from Street to Harris in April, 1972, in which Street invited Harris to visit Maryland. Appellants discount this latter evidence by saying no mention was made during the call of bringing girls to Maryland for prostitution purposes. We reject appellants' attempts to limit the evidence which the jury could use to determine a conspiracy existed. We have recognized that circumstantial evidence is almost always required to prove an agreement to violate the law. *United States v. Butler*, 494 F.2d 1246 (10th Cir. 1974). The jury had evidence which, if believed, established the acts set forth previously. These acts and the inferences reasonably drawn therefrom would have allowed the jury to determine beyond a reasonable doubt that appellants had agreed to violate the law.

Appellants argue Street could not have been found guilty of the Mann Act and Interstate Racketeering Act violations if the conspiracy were not shown. Having determined there was sufficient evidence Street was a co-conspirator, we need not consider this contention.

Appellants attack Harris' convictions on Counts II, III and V because Cookie Martinez's testimony is the only evidence the trips specified in those counts were for the purpose of prostitution. The involuntary servitude count against all ap-

pellants also is attacked because Cookie Martinez's testimony regarding torture, confinement and threats is not supported by other evidence and is contradicted by her own acts. Our appellate function does not permit the weighing of conflicting evidence or consideration of witnesses' credibility. *United States v. Buck*, 449 F.2d 262 (10th Cir. 1971); *United States v. Baker*, 444 F.2d 1290 (10th Cir. 1971), *cert. den'd*, 404 U.S. 885, 92 S.Ct. 222, 30 L.Ed.2d 167. The jury has determined these matters and we cannot say the evidence was insufficient to support its verdict.

Our former opinion is modified as it related to the missing Exhibit 71. Our discussion in that opinion of the warrant issue applies to the Exhibit, as well as to the testimony concerning the pistol and marijuana. Consequently, there is no necessity for setting aside the convictions and remanding for a new trial. The convictions are AFFIRMED.