52 F.3d 338
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Alan Wayne GOCKLEY, Defendant-Appellant.
 Nos. 93-6415, 94-6150.
 United States Court of Appeals, Tenth Circuit.
 April 4, 1995.
 
 1
 Before TACHA and KELLY, Circuit Judges, and VRATIL, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 VRATIL, District Judge.
 
 
 4
 Defendant-appellant Alan Wayne Gockley appeals his conviction for bank robbery in violation of 18 U.S.C. Sec. 2113(a). In this consolidated appeal, defendant requests either a new trial or a judgment of acquittal, arguing that (1) the evidence offered at his trial was insufficient to support his conviction; (2) evidence of his wife's firearm purchase one week before the robbery was more prejudicial than probative, and the trial court improperly admitted it into evidence; and (3) the trial court erred in refusing to grant a new trial based on defendant's newly discovered alibi evidence. We exercise jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 I. Factual Background
 
 5
 On February 9, 1993, a man in a blue and white baseball hat robbed the Heartland Federal Savings and Loan Association in Oklahoma City. The man wore no hood or mask and was in the bank for approximately ten to fifteen minutes.
 
 
 6
 In demanding money from Jill Clark Hardy, who was working behind the teller counter, the robber put his hand inside a zippered gym bag and grasped what Ms. Hardy believed to be a gun. Ms. Hardy surrendered the money from her teller drawer, and Brenda Braine, another bank employee, attempted to unlock other teller drawers. During the course of the robbery, the bank telephone began to ring. The robber became anxious and left the bank with only $1,666.00.
 
 
 7
 Immediately after the robbery, agents of the Federal Bureau of Investigation interviewed Ms. Braine and Ms. Hardy, both of whom had undergone FBI training on identification. Although details varied slightly, both women described the robber as approximately six feet tall and about 200 pounds, wearing a baseball hat and carrying a black or gray bag. Ms. Braine and Ms. Hardy independently identified defendant as the robber both before and during trial. In addition, at the time of his arrest in June 1993, authorities found a blue and white baseball cap and a black gym bag in defendant's van. At trial, those items were identified as similar to those of the robber.
 
 
 8
 During his case in chief, defendant offered extensive testimony regarding his desperate financial situation both before and after the robbery[1] in order to prove that his fortunes had not improved after the robbery and that therefore he must be innocent. In response to this testimony, the government elicited testimony that Ms. Gockley had paid about $57.00 for a .25 caliber pistol (with ammunition) on February 2, 1993--one week before the robbery.
 
 
 9
 Defendant was convicted on September 14, 1993, following a two-day jury trial. He now contends that the evidence was insufficient to support his conviction and that the trial court erred in admitting evidence of Ms. Gockley's firearm purchase. In addition, defendant claims that the trial court erred in failing to order a new trial in light of newly discovered evidence presented to the court by affidavit after trial.
 
 II. Sufficiency of the Evidence
 
 10
 In reviewing the sufficiency of the evidence, the court views the evidence in the light most favorable to the government to determine whether a rational jury could have found defendant guilty beyond a reasonable doubt. United States v. Markum, 4 F.3d 891, 893 (10th Cir.1993). We review the sufficiency of the evidence de novo. Id.
 
 
 11
 Defendant argues that the evidence was insufficient because the eyewitness identifications were tainted and unreliable, because defendant presented evidence that he was probably at home at the time of the robbery, and because his indigent circumstances did not improve after the robbery.
 
 
 12
 The defense complains that within a three-month period the prosecution presented Ms. Braine and Ms. Hardy four opportunities (two photospreads, one in-person lineup, and one trial) to identify defendant and, in doing so, created a subliminal suggestion that he was the robber. The sufficiency of the eyewitness identifications was resolved against defendant, however, at trial. Both women had received FBI training in observation and identification skills. They each spent ten to fifteen minutes in close proximity to the robber, who was unmasked and entered the bank in broad daylight. Each of the eyewitnesses was certain of her identification at trial, and the record contains no evidence that the FBI agents employed suggestive or otherwise defective identification procedures. The court finds no deficiency in the evidence on this issue.
 
 
 13
 The jury also received, considered and rejected testimony regarding defendant's alibi and his financial condition. Defendant's evidence on both points was equivocal, at best. Defendant claimed that he was at home building a vanity at the time of the robbery. One alibi witness--his wife--acknowledged that she could not testify positively as to her husband's location on the morning of the robbery because she was taking medication that left her dazed. Defendant's other alibi witness--his sister-in-law--testified that she helped him install the vanity on the morning of the robbery, but she could not recall whether defendant was present throughout the entire period.
 
 
 14
 Defendant's evidence that he was destitute after the robbery was likewise far from conclusive in proving his innocence. Given the relative insignificance of the amount taken, compared to the depth of the Gockleys' debt and all the other evidence presented at trial, the court cannot find that the jury's verdict was unsupported by the evidence. Indeed, our view is quite substantially to the contrary.
 
 III. Admission of Firearm Purchase
 
 15
 "The balancing of the probative value of evidence against its prejudicial effect is left to the discretion of the trial court. We will reverse only for a clear showing of abuse of discretion." United States v. Zang, 703 F.2d 1186, 1191 (10th Cir.1982), cert. denied, 464 U.S. 828 (1983), (citing United States v. Harris, 534 F.2d 207, 213 (10th Cir.1975), cert. denied, 429 U.S. 941 (1976)).
 
 
 16
 The trial court initially ruled that evidence of Ms. Gockley's firearm purchase was inadmissible; because defendant was charged with unarmed robbery, the court held that evidence concerning the handgun was more prejudicial than probative under Rule 403 of the Federal Rules of Evidence. The court later reversed its view, finding that the balance between prejudice and probative value had shifted and that evidence of the gun purchase was properly admitted to rebut defendant's poverty defense. In response to defendant's complaint of prejudice, the prosecution offered to refer to Ms. Gockley's purchase not as a gun purchase but merely as a "non-necessary" one. Defendant objected that such a reference would suggest that Ms. Gockley had made frivolous use of her sparse financial resources. He therefore insisted that if Ms. Gockley testified about the gun purchase in any respect, she must also be allowed to explain her view that the expenditure was necessary to protect her family.
 
 
 17
 " 'Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under [Federal] Rule [of Evidence] 403.' " United States v. Sides, 944 F.2d 1554, 1563 (10th Cir.), cert. denied, 502 U.S. 989 (1991) (citations omitted) (emphasis in original). It is clear that the district court carefully considered the balance between the relevance of the pistol purchase and the prejudice that would result from the admission of that evidence.
 
 
 18
 Defendant in this case did not suffer unfair prejudice. He put his financial condition in issue with knowledge of the potential rebuttal evidence. He decided to tell the jury specifically what Ms. Gockley purchased for $57.00. Having embarked upon this perilous defense, defendant cannot now complain that he chose the wrong path or that his line of defense should have been insulated from a credibility attack by the prosecution. The district court did not abuse its discretion in allowing the challenged evidence as rebuttal to defendant's "poverty" defense.
 
 IV. Newly Discovered Evidence
 
 19
 Consideration of a motion for a new trial rests within the sound discretion of the trial court. We review the trial court's decision under an abuse of discretion standard. United States v. Page, 828 F.2d 1476, 1478 (10th Cir.), cert. denied, 484 U.S. 989 (1987).
 
 
 20
 To warrant a new trial, newly discovered evidence must be (1) more than impeaching or cumulative evidence; (2) material to the issues involved; (3) evidence that would probably produce an acquittal; and (4) the type that, with reasonable diligence, could not have been discovered and produced at trial. United States v. Sutton, 767 F.2d 726, 728 (10th Cir.1985).
 
 
 21
 Defendant offered three affidavits in support of his motion for a new trial on the basis of newly discovered evidence. Maria Tennon's affidavit stated, "I could have been at Alan Gockley's residence on February 9, 1993. I cannot say I was definitely there." A second affidavit, by Glenn Garner, stated that Mike Evett of the Federal Public Defender's office showed him a photgraph of a bag "like the one ... stolen in [a] March 1993 burglary [of Mr. Garner's home]." Mr. Evett's affidavit confirmed Mr. Garner's statement. In seeking a new trial on the basis of the latter affidavits, defendant reasons that since the bank robbery occurred in February 1993 and Mr. Garner's bag was not stolen until March 1993, defendant could not have used the bag to rob the bank.
 
 
 22
 The trial judge reviewed this newly discovered evidence and ruled that it was not likely to have any effect on the outcome of the trial, as there was ample evidence from which a reasonable jury could find the defendant guilty even if it were to consider the newly discovered evidence. Given the weakness of defendant's affidavits and the relative strength of the government's case against him, this court discerns no abuse of discretion in the trial court's refusal to grant a new trial.
 
 V. Conclusion
 
 23
 We affirm in all respects.
 
 
 
 *
 The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Defendant's common-law wife, Donna Rapier Gockley, testified that she and defendant had fallen behind on their rent, utilities and other bills; that they were both out of work; and that they had sold or pawned many of their personal belongings, including their only working car and a number of other household items